REGAN VAPOR-ENGINE CO. *v.* PACIFIC GAS-ENGINE CO. *et al.*

*(Circuit Court of Appeals, Ninth Circuit. January 30, 1892.)*

1. INVENTION TO BE MADE—CONTRACT CONCERNING.
    A contract by which A. does "license, grant, and convey" any invention he may thereafter make in gas-engines to B. does not operate as an assignment of such invention when made, and, at most, gives to A. the right in equity to have an assignment of such invention to him, which may be defeated by a prior assignment of the same, to a purchaser without notice of such contract, in good faith, and for a valuable consideration.

2. SAME—ASSIGNMENT OF SUCH CONTRACT.
    An indorsement of such contract by B. in these words: "I hereby sell, assign, and transfer unto M. M. Barrett all my right, title, and interest in and to the above agreement,"—only passes the paper on which it is written, with such rights of action thereon as have not become vested in the indorser.

3. RECORD OF THE ASSIGNMENT OF A PATENT.
    The record of the assignment of two patents contained the words, "contracts concerning the same." *Held* to mean "concerning the rights and privileges granted by said patents, and thereby assigned;" and also that constructive notice could not be predicated of such record, as to the *status* or ownership of another patent. 47 Fed. Rep. 511, reversed.

*(Syllabus by the Court.)*

Appeal from Circuit Court of the United States for the Northern District of California.

*J. H. Miller*, for appellant.

*John L. Boone*, for appellees.

Before DEADY, HANDFORD, and MORROW, District Judges.

DEADY, District Judge. On May 12, 1890, the appellant brought suit against the appellees, in the circuit court of the United States for the northern district of California, for an alleged infringement of reissued letters patent numbered 11,068, for a gas-engine, issued to the appellant, as the assignee of Daniel Regan, the inventor, on April 1, 1890.

The appellees pleaded in abatement that the Pacific Gas-Engine Company, one of the appellees, was the owner of all rights under said patent for the Pacific coast. To this plea a replication was filed. The case was then referred to the master, who reported against the plea. Exceptions were taken to the report, which were sustained, and the bill was dismissed. The plaintiff appeals to this court.

On May 15, 1886, Regan and Garratt entered into an agreement wherein they stated that we "do hereby license, and grant and convey, each to the other," throughout certain states and territories,—the license to Garratt being for the Pacific coast,—"all such inventions and improvements, whether patented or not, which may be here a ter made by either of us," in gas-engines and the mechanism by which they are operated.

This agreement was never recorded in the patent-office, nor was it even recordable. It forms the basis of the appellees' claim to be the owner of patent numbered 408,356, issued to Regan on August 6, 1889, and upon which this suit is brought. On September 10, 1889, Regan assigned to Sanford S. Bennett, in consideration of $3,000, the undivided one-half of said patent for the whole United States, which assignment was duly recorded on September 17, 1889. On October 22, 1889, Regan and Bennett, for a valuable consideration, assigned to the appellant the entire patent for the United States. On December 21, 1889, M. M. Barrett, one of the defendants, took an assignment from Garratt of all his right, title, and interest in the Regan-Garratt agreement of May 15, 1886. At this time Barrett had full knowledge of appellant's claim to patent 408,356. On May 6, 1890, Barrett assigned the interest acquired from Garratt to the Pacific Gas-Engine Company.

On March 3, 1890, the appellant surrendered its patent, under section 4916 of the Revised Statutes, and had a reissue on April 1, 1890. It is numbered 11,068, and grants to the Regan Vapor-Engine Company, its successors or assigns, the exclusive right to make, use, and vend the said invention for the term of 17 years.

The lower court decided that the Regan-Garratt agreement of May 15, 1886, operated as an assignment of an invention which Regan, three years afterwards, on August 6, 1889, made and secured a patent for, as well as the patent issued on April 1, 1890, the same being a reissue thereof, and which was issued to and in the name of the appellant. Accordingly a decree was entered which, in effect, decides that the appellant has no title to the patent in suit for the Pacific coast, and that the Pacific Gas-Engine Company has.

The agreement of May 15, 1886, is not the assignment of a patent, though it contains language—"grant and convey"—sufficient for that purpose, if there was anything to assign. It may be good as an agreement to sell and assign a future invention, but it cannot operate as a sale or assignment of such an invention, even when made. No one can sell that which he hath not. Comyn's Dig. tit. "Grant," D. A man cannot grant all the wool that shall grow upon his sheep that he shall buy afterwards, for there he hath it not actually or potentially. Bac. Abr. tit. "Grant," D.

Chancellor Kent says, (2 Comm. 468:)

"The thing sold must have an actual or potential existence, and be specific or identified, and capable of delivery; otherwise it is not strictly a contract of sale, but a special or executory agreement. * * * But, if the article intended to be sold has no existence, there can be no contract of sale."

Benjamin, in his work on Sales, (section 78,) says:

"In relation to things not yet in existence, or not yet belonging to the vendor, the law considers them as divided into two classes, one of which may be sold, while the other can only be the subject of an agreement to sell,—of an executory contract. Things not yet existing, which may be sold, are those which may be said to have a potential existence; that is, things which are the natural produc.. or expected increase of something already belonging to the vendor. A man may sell the crop of hay to be grown on his field, the wool

to be clipped from his sheep at a future time, the milk that cows will yield in the coming month, and the sale is valid. But he can only make a valid agreement to sell, not an actual sale, where the subject of the contract is something to be afterwards acquired, as the wool of any sheep, or the milk of any cows, that he may buy within the year, or any goods to which he may obtain title within the next six months."

A man may make a valid agreement to sell an invention not yet made by him, but he cannot make a valid sale thereof.

Curtis on Patents (section 160) says:

"The statutes, however, which authorize the assignment of an invention before the patent has been obtained, appear to embrace only the cases of perfected or completed inventions. There can, properly speaking, be no assignment of an inchoate or incomplete invention, although a contract to convey a future invention may be valid, and may be enforced by a bill for specific performance. But the legal title of an invention can pass to another only by a conveyance which operates upon the thing invented after it has become capable of being made the subject of an application for a patent."

Mr. Robinson, in his work on Patents, (volume 2, § 771,) says:

"A contract for the transfer of inventions not yet in being is valid as a contract, but is not an assignment. The subject-matter of an assignment is an existing invention, not only conceived as an idea of means, but actually reduced to practice, and thus invested with the inchoate or perfected right to that monopoly which must always pass with the invention in this form of conveyance. An intended or incomplete invention rests merely in purpose and expectation. It does not clothe the proposed inventor with any special privileges, or entitle him to any special rights in the monopoly which, if his purposes were accomplished, he might be able to secure. The transfer of such future inventions is a mere executory contract, to assign them if they happen to be made."

To this general rule there appears to be one exception, and that is where a patentee assigns a patent already issued, together with all future improvements thereon. It has been held that such assignments pass the title to the future improvements.

But that is not this case. Here there is no assignment of a patent, with any improvements thereon. The document which constitutes the basis of appellees' claim is, at most, an attempted assignment of any independent inventions to be thereafter made, by either of the contracting parties, in gas-engines.

The case of *Littlefield* v. *Perry*, 21 Wall. 226, is cited in support of this doctrine. This case is very different from the one in hand. There the patentee had assigned a subsisting patent, with all future improvements thereon. Subsequently he made and patented an improvement on the same, and used it without the consent of his assignee. The assignee sued for infringement, and the court held the assignor was estopped by his deed. The case arose between the assignee and the patentee, and not two persons claiming to be the assignees of the same thing. Between the two cases there is no analogy.

The evidence is satisfactory that the plaintiff took the assignment of this patent for a valuable consideration, in good faith and without notice of the Regan-Garratt contract, and it is so admitted in the examination before the master by counsel for the appellees.

Whatever effect the Regan-Garratt contract may have in equity, as against Regan, or those claiming under him with notice thereof, upon these facts it appears the legal title to the invention is in the appellant, and the defendant's plea that it is the owner or assignee of the patent for any part of the United States must be found not true.

A point is sought to be made for the appellees, on the language of the assignment by Regan and Bennett to the appellant under the decision in *Turnbull* v. *Plow Co.*, 6 Biss. 225, on rehearing, 9 Biss. 334, 14 Fed. Rep. 108. In that case the patentee assigned for the counties of Warren and Henderson, in the state of Illinois. Subsequently to this assignment the patentee assigned " all his right, title, and interest in the patent in the state of Illinois." The first assignment was not recorded in time to prevent the second assignment from prevailing against it. The second assignment being merely a quitclaim, the court held, in a suit by the first assignee for infringement, that, under the circumstances, it only conveyed such interest as the patentee then actually had left in him, which was the state of Illinois, less the two counties disposed of by the first assignment.

This case was decided on the language of the assignment, and not upon the record of the same, or the want thereof. Judge DRUMMOND held, in analogy to conveyances of real property, that the subsequent assignment of the patentee's " right, title, and interest " could not be construed to pass an interest which had already been assigned to another, and which, in fact, he did not then have.

He says :

"Where a man assigns all the right which was conveyed to him by letters patent, the meaning is that the assignment take with it everything that the letters patent conveyed. It is certainly different from an assignment which declares merely that he assigns all the interest which he, at the time he makes the assignment, has in the letters patent, provided, as in this, he had previously assigned a part of the interest which he had to another person." 14 Fed. Rep. 110.

But the facts of that case are very different from the one under consideration. The assignments under which the appellant claims are not mere quitclaims. The one from Regan to Bennett is of " one undivided half of all the right, title, and interest granted to him (Regan) in and to said invention by said letters patent; " and in the one from Regan and Bennett to the appellant the assignors do " bargain, sell, convey, and assign * * * the said patents, and each of them, * * * and all their right, title, and interest * * * in and to said patent."

These assignments are of the inventions, and the patents to which they relate, as fully as when granted to the patentee. The fact that the second one also contains the words, " and all their right, title, and interest," does not change the character of the instrument. The first and greater words, " bargain, sell, convey, and assign," give scope and effect to the writing, and express the full intention of the persons who executed it. The latter ones may and should be regarded as surplusage.

But admitting that the Regan-Garratt contract operated, as claimed by appellees, as an assignment of the patent in suit, as soon as it came into

existence, the plea of the appellees that they are the owners of the patent must be found not true, because they do not so far connect themselves with that instrument.

The supposed assignment from Garratt to Barrett is indorsed on the Regan-Garratt contract. It reads as follows:

"SAN FRANCISCO, CAL., Dec. 21, 1889.

"For and in consideration of five dollars, to me in hand paid, the receipt of which is hereby acknowledged, I hereby sell, assign, and transfer unto M. M. Barrett all my right, title, and interest in and to the above agreement."

At the date of this indorsement the original patent, of which the one in suit is a reissue, had been issued. Whatever right Garratt had therein, so far as this case is concerned, had already accrued. These rights did not pass to Barrett by this indorsement, but only his right, title, and interest in the contract,—the paper as it then stood, with such rights of action thereon as had not become vested in Garratt.

If Garratt had similarly indorsed a promissory note to Barrett, on which a payment had been made, an indorsement in like manner would only confer the right to collect the unpaid remainder.

On May 14, 1886, Regan, Eichler, and Rauer assigned to Garratt two patents for improvements in gas-engines, being patents numbered 333,-336 and 320,285, and dated, respectively, December 29, 1885, and June 16, 1885, "with each and every one of the inventions and improvements therein described, and all rights, liberties, and privileges that were granted and secured to us, and each of us, by the said letters patent, and the assignment thereof, and contracts concerning the same." This assignment was recorded in the patent-office, March 10, 1888.

It is claimed that the record of the words in this assignment, "and contracts concerning the same," gave notice to the appellant of the contents of the contract of May 15, 1886, which was not recorded, and that such words referred to and included such contract. If we may use the expression, this conclusion appears to us very "far fetched;" in fact, it is purely imaginary. "Contracts concerning the same" plainly refers to the antecedent part of the sentence, which speaks of inventions and improvements described in said letters patent, and "the assignments thereof." The improvements and privileges mentioned, and which the supposed contracts "concern," are plainly of the two patents assigned. Not a word therein can be tortured into referring to the contract of May 15, 1886, which relates wholly to the independent inventions and improvements in gas-engines contemplated and described in that writing.

Nor is it apparent how any words in the record of the assignment of May 14, 1886, could be notice to any one of the *status* or ownership of the patent sued on. Actual notice of the exister·· of the writing, if it was material, might be shown, but how constructive notice can be predicated of such a record against the assignee of this patent defies comprehension.

The decree of the circuit court is reversed, and the case is remanded, with directions to affirm the master's report.