[L. A. No. 4869. In Bank.—October 22, 1920.]

## NATIONAL PACIFIC OIL COMPANY, Respondent, v. W. E. WATSON, Appellant.

[1] VENDOR AND VENDEE—BREACH BY VENDOR—RESCISSION BY VENDEE —RECOVERY OF MONEYS PAID.—Where a contract of sale is rightfully rescinded by the vendee for a breach by the vendor, the latter is liable for the return of the moneys which he has received.

[2] ID.—ASSIGNMENT OF CONTRACT — BREACH OF VENDOR — RECOVERY OF MONEYS PAID—RIGHT OF ASSIGNEE.—One who holds a contract of sale by assignment and who because of a breach of the contract by the vendor rightfully rescinds it has the right by virtue of his ownership of the contract to recover all moneys paid under the contract, whether paid by him or by those who held the contract prior to him.

[3] ID.—DELIVERY OF POSSESSION—UNREASONABLE DELAY BY VENDOR —RESCISSION BY VENDEE.—Under a contract for the sale of oil land making time of the essence of the contract and providing that the vendee should have the right to immediate possession, a delay of three years and nine months in giving possession is more

---

1. Right of vendee in contract for sale of real property to recover payments made, on rescission of contract, note, L. R. A. 1918B, 540.

2. Right of assignee of contract for purchase of land to sue for rescission thereof, note, Ann. Cas. 1917E, 845.

than a reasonable time, and the vendee has the right to rescind the contract.

[4] ID.—DELIVERY OF POSSESSION—DUTY OF VENDOR—CONSTRUCTION OF CONTRACT.—A clause in a contract of sale that "said buyer shall be entitled to immediate possession of said premises" is to be construed as an obligation on the part of the vendor to put the vendee in peaceable possession, and not as a mere provision that the vendee was privileged to take possession if he could get it without responsibility on the part of the vendor, where the parties, upon discovering that the land was claimed by a third party by adverse possession, made new arrangements providing that the vendor was not to receive further installments on the price until the vendee was put in possession.

[5] ID.—INABILITY TO GIVE POSSESSION—NEW ARRANGEMENTS AS TO PAYMENTS—ABSENCE OF NOVATION.—An arrangement between a vendor and vendee, upon discovery that immediate possession could not be given to the vendee as provided by the contract, placing the payments on the price in escrow until such time as the vendor might give possession, did not amount to a novation, but only a change in the agreement of the parties as to the manner of payment of the price.

[6] PLEADING—WRITING—LEGAL EFFECT.—Where a writing is set forth in a pleading it is not necessary to plead its legal effect in addition.

[7] VENDOR AND VENDEE—RESCISSION FOR FAILURE TO DELIVER POSSESSION — TENDER OF BALANCE OF PRICE — WHEN UNNECESSARY.—A vendee under a contract of sale is not required to tender the balance of the purchase price before he can rescind the contract for failure of the vendor to deliver immediate possession as required by the contract, where the vendor admittedly could not give possession.

[8] ID.—CONVEYANCE BY QUITCLAIM DEED—RULE AS TO TITLE—INAPPLICABILITY TO CONTRACT CALLING FOR POSSESSION.—The rule that an agreement to convey by quitclaim deed does not require the vendor to convey a good title has no application to a case where from other considerations it is plain that the contract was conditional upon the vendee being let into actual possession.

[9] ID.—FAILURE TO DELIVER POSSESSION WITHIN REASONABLE TIME—NEW ARRANGEMENTS—RIGHT OF RESCISSION—ABSENCE OF WAIVER. While a vendee under a contract of sale waives his right to rescind for failure of the vendor to comply with the provision of the contract requiring delivery of immediate possession, by entering into new arrangements with the vendor as to placing of the payments on the price in escrow until such time as the vendor might give possession, the right to rescind for failure of the vendor to thereafter deliver possession within a reasonable time is not thereby waived.

[10] ID.—RESCISSION — DEMAND FOR POSSESSION — WHEN UNNECESSARY.—A vendee under a contract of sale is not required to demand possession before rescinding the contract for failure of the vendor to deliver possession as required by the contract, where it was definitely understood by both parties that the vendor could not give possession.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. W. Curtis, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

W. N. Goodwin and Goodwin & Morgrage for Appellant.

Gibbon & Shelton and W. C. Shelton for Respondent.

OLNEY, J.—This is an appeal from a judgment for the plaintiff in an action brought upon the alleged breach of a contract for the sale of real property to recover payments on account of the purchase price made the defendant as vendor. The facts are practically undisputed, and are these:

The defendant by written contract agreed to sell to one Reynolds a certain forty acres of land in the oil district of Kern County for twenty-five thousand dollars. Although it is not so specified in the contract, which calls directly for the sale of the land as distinguished from a sale of the defendant's title, the land was government land and the defendant's only title thereto was under an unpatented mineral location. Two thousand five hundred dollars of the purchase price was paid down, and the balance was to be paid in subsequently maturing installments. Upon the payment of the last installment, the vendee was to receive a quitclaim deed to the property. Time was expressly made of the essence of the contract, and it was also provided that the buyer should be entitled to immediate possession and to the right to take oil from the property. Shortly after the making of the contract, Reynolds, the buyer, assigned it to the Consolidated Midway Oil Company.

Not long after the execution of the contract and before the date fixed for the payment of the first deferred installment of the purchase price, it was found that the land was, and since before the execution of the contract had been, in the adverse possession of others than the defendant, and that, because of this adverse possession, the vendee and his as-

signee could not have possession under the contract. To cover this situation, a further arrangement was made, evidenced by written escrow instructions signed by both parties, whereby the installments of the purchase price as they became due were to be paid to a certain bank to be by it paid over to the defendant when, but not before, peaceable possession of the land was delivered to the assignee of the buyer. The escrow instructions contain no provision whatever for the possible contingency that peaceable possession might not be delivered for an indefinite time or at all, and in fact make no mention whatever of that contingency.

Three installments, aggregating twelve thousand five hundred dollars, were paid into the bank as they became due. When the last of them was paid the property was still being held adversely, and shortly thereafter, and before the next installment became due, a third arrangement was made, also in writing, whereby the money in escrow was divided between the parties, seven thousand five hundred dollars to the vendor and five thousand dollars to the vendee's assignee and it was provided that no further payments on the purchase price need be made until thirty days after the delivery of possession, when all of the purchase price unpaid, including the five thousand dollars to be received back from the escrow by the vendee's assignee, should be paid. In the case of this arrangement also, although it was called forth by the continuing inability of the defendant to deliver possession, no provision is made for the contingency that such inability might continue indefinitely.

The money in escrow was divided in accordance with this last arrangement, and not long afterward the vendee's assignee in turn assigned the contract to the plaintiff. The date of the last arrangement was May 27, 1910. After it was made, the inability of the defendant to give possession continued, and from time to time proposals were made on both sides for a final settlement of the transaction. None of these proposals, however, came to anything, and after the matter had run along in this fashion until February 18, 1914, with the defendant still unable to give possession, the plaintiff notified the defendant that because of his failure and inability in this respect it demanded back the ten thousand dollars which the defendant had received, two thousand five hundred dollars as the original payment on account

and seven thousand five hundred dollars from the money in escrow. This demand, which was practically a notice of rescission, was refused, and the plaintiff immediately brought the present action, which resulted, as we have said, in a judgment in its favor, from which the defendant appeals.

[1] It is manifest at once that the primary question in the case is whether or not the defendant's continued failure and inability to give possession from the date of the last arrangement between the parties, May 27, 1910, to the date of the notice of rescission, February 18, 1914, a period of nearly four years, constituted a breach of the contract in such an essential particular as to entitle the plaintiff to rescind it. If it did, the contract having been rightfully rescinded, the defendant is liable for the return of the money which he received. Before considering this question, however, there is another which should be disposed of preliminarily. It is contended on behalf of the defendant that even if the contract were properly rescinded, the defendant's obligation to return the money he received is one to return it to the parties who paid it, who were not the plaintiff but the original vendee, Reynolds, and his immediate assignee, the Consolidated Midway Oil Company, that the plaintiff cannot recover except as the assignee of these last-named parties of the right to the money, and that the assignment of the contract to the plaintiff was not an assignment of this right. The crux of the contention, of course, lies in the proposition that an assignment of the contract was not an assignment of the right to recover moneys paid upon the contract in case of its breach and consequent rescission.

[2] It is to be noted that the assignment of the contract was prior to the rescission, so that upon this point the question is, Has one who holds a contract by assignment and who because of a breach of the contract rightfully rescinds it, the right by virtue simply of his ownership of the contract to recover all moneys paid under the contract, whether paid by him or by those who held the contract prior to him? The answer to this question is not doubtful. It is said, first, that the money must be regarded as money in the defendant's hands had and received for the use of those who paid it, who were not the plaintiff, but his assignors. But this begs the question. It is true that the

contract being rescinded, the money paid upon it is considered as if originally paid the defendant for the use and benefit of those paying it. But the real question is, Did the assignment by those parties of the contract under which they paid the money have the effect of assigning their right to recover that money in case the contract were subsequently rescinded for a breach? Upon this point it would seem plain enough that when the assignor assigns the contract, he intends to assign, and does assign, all benefits under it, including the benefit of any payments that have been made on account of it.

It is said, second, that the recovery of the money is upon an implied contract to repay, that this implied contract is wholly distinct from the contract of sale which is ended by the rescission, and that the conclusion follows that an assignment of the contract of sale is not an assignment of the separate and distinct implied contract for the return of the moneys. This argument is in point, but the fallacy of it lies in its failure to appreciate the essential character of the so-called implied contract. The implied contract has no existence in fact. It is but a fiction of law, designed from the sole purpose of affording relief under the limited forms of action permitted by the common law and necessitated by the fact that only certain forms of action were recognized by the common law. Essentially the so-called implied contract is, in such a case as the present, but a remedy given for a breach of the contract. In this respect it differs in no wise from the other remedy afforded by law as distinguished from equity, that of the recovery of damages. The two remedies are inconsistent in the sense that the injured party cannot have both, but if the breach goes to the essence of the contract, he can have one or the other, as he chooses. They are nothing more than different kinds or measures of relief for the same wrong. This being the case, it follows that he, who is the owner of the breached contract and who by virtue of his ownership is the one entitled to whatever relief the law may give for the breach, is the one entitled to recover the moneys paid on the contract, since that recovery is but a form of relief given by law for the breach.

The exact contention which the defendant now makes was made in *Latimer* v. *Capay Valley Lumber Co.*, 137 Cal. 286,

290, [70 Pac. 82], and the same answer was given to it, although in a much more condensed form. We would not have felt under any necessity to amplify the discussion in that case or to do more than refer to it as determinative, had it not been for the importance given the point by the district court of appeal, which, because of it, reversed the judgment. We deem it only right to say, however, that the responsibility for not following this previous decision rests primarily, not with the district court of appeal, but with counsel for the respondent. The point was clearly and emphatically urged by the appellant in his opening brief. No adequate reply whatever was made in the respondent's brief, and in particular attention was not called to the fact that the point had already been determined both in this state and elsewhere. The court was practically left in the dark to grope its way as best it might, and it was not until this court was petitioned for a hearing that attention was called to the fact that the question was now hardly a controvertible one, in view of the decision referred to, a decision which would undoubtedly have been followed by the district court of appeal if it had been brought to its notice.

Coming now to the primary question in the case, it is, as we have said, this: Was the defendant's continued inability and failure to give possession for a period of nearly four years after the last arrangement between the parties a breach of the contract in such an essential particular as to give the plaintiff a right to rescind it? It is evident at once that if there was a breach of the contract in this respect, it was a breach in so essential a particular as to give the right to rescind. A more important feature of the performance of the contract than that of giving possession it would be difficult to imagine, and a failure of performance in this respect would go to the very essence of the contract. Without possession, the contract was practically valueless.

[3] It is also evident that if the defendant was obligated to give possession, the lapse of nearly four years was more than a reasonable time for performance by him. Time is expressly made of the essence of the contract, and it is stipulated that the vendee should have the right to possession forthwith. The very nature of the property, oil land, with its sharp fluctuations in value and the possibility of its being

drained of oil either by those in adverse possession or by wells adjoining it, would without any express provision that time was of the essence, make it of the essence that possession as contracted for be had within a short time. The period of three years and nine months, during which possession was delayed, was more than a reasonable time for the vendor to comply with his obligation in this particular, if such obligation existed. The finding of the lower court that possession had been delayed for more than a reasonable time was clearly correct.

[4] The question, therefore, is reduced to the simple one as to whether or not the vendor was under any obligation to put the vendee in peaceable possession. The language of the original contract is that "said buyer shall be entitled to immediate possession of said premises." Simply taking this by itself, it might be said to mean either one of two things: either that the buyer is entitled to have possession from the seller, or, as was held of very similar language in *Tewksbury* v. *Laffan*, 1 Cal. 129, that he was privileged to take possession if he could get it, but without any responsibility on the part of the seller to see that he did get it. But while, perhaps, either of these constructions is possible, taking the language by itself alone, the parties themselves, by their subsequent conduct, plainly took the view that the vendor was bound to give possession, and this is conclusive as to their real intent and the true construction of the contract. The conduct by which the parties manifested their view of the contract was the making of the two subsequent arrangements as the result of the continued inability of the defendant to give possession. There would have been no occasion for making these arrangements, if the vendor were under no obligation to give possession, since the failure of the vendee in that case to obtain possession would not have affected the rights of the parties, and the defendant could have insisted that the payments of the purchase price be made to him as the contract provided. Instead of this, it was provided by the first arrangement that all payments should go into escrow until he gave possession, and by the second arrangement, the vendor's inability to give possession still continuing, that the money already in escrow should be divided, and no further payments whatever be required until possession was given. These arrangements both plainly in-

terpreted the original contract as requiring possession of the defendant, and imply that that obligation was a continuing one.

[5] It is contended on behalf of the defendant that the last arrangement was a novation, meaning by that that it was in complete substitution for the previous contract and arrangement between the parties. But there is not a word in the new arrangement to that effect, and it refers to the original contract and then goes on to provide merely for the matter of payments in view of the continued failure of the defendant to give possession. It does not purport to do anything more than to change the agreement of the parties as to when the purchase price should be paid. It was clearly intended simply to change the old contract in that particular and nothing more. Considering together the original contract and the two modifications made of it, the understanding between the parties was very evidently that the vendor should put the vendee in possession and that if he did not do so there was an essential failure to perform upon his part.

The conclusion just stated is practically decisive of the case, but there are a number of points made on behalf of the defendant which should perhaps be noticed. It is claimed that the complaint fails to state a cause of action for the reason that while it sets forth in full the three writings between the parties, it fails to allege that by these writings the defendant was bound to deliver possession to the vendee. [6] But such an allegation would be nothing more than pleading the legal effect of the writings, and the rule is familiar that where a writing is set forth in a pleading it is not necessary to plead its legal effect in addition.

[7] It is contended that no tender of the balance of the purchase price was alleged or shown. But such tender was not necessary, since it would have been wholly futile. The plaintiff had the right to insist as a condition of the tender that it receive possession, and this admittedly the defendant could not give.

[8] It is urged that the deed called for by the contract was a quitclaim deed only, and that the rule is that an agreement to convey by quitclaim does not require the vendor to convey a good title. This may or may not be the rule in this state, where, unlike many states, warranty deeds are not

usual, and the form of deed usually employed, a grant deed, does not, any more than a quitclaim deed, imply a warranty of good title. (Civ. Code, sec. 1113.) Furthermore, we are not concerned in this case with the question as to whether the vendor had to give a good title, but with that as to his being required to give peaceable possession. But however all this may be, the conclusive consideration is that the rule stated by counsel is at most a rule as to the construction and meaning to be given a contract. It can have no application to a case where from other considerations it is plain that, although only a quitclaim deed was called for, the contract was conditional upon the vendee being let into actual possession. Of this sort is the present case.

[9] It is next objected that a party desiring to rescind must not subsequently affirm the contract, and must rescind promptly on the occurrence of the cause for rescission, and that in this case the vendee waived the right to rescind upon the failure of the defendant to deliver possession immediately, both by making the two arrangements which in effect affirmed the contract and by failing to rescind promptly at that time. The answer to this is that while the vendee for both these reasons undoubtedly waived or lost the right to rescind for the vendor's failure to give possession immediately upon the execution of the contract, that is not the ground upon which rescission is now claimed. By the arrangements between the parties, the vendor's original obligation to give immediate possession was transformed into one to give possession within a reasonable time after the making of the last arrangement, that of May 27, 1910. It is for the failure to perform this obligation that the plaintiff finally sought to rescind, and there was no waiver of this failure in any manner.

[10] The point is also made that the plaintiff failed to demand possession of the defendant in advance of endeavoring to rescind, and that without such demand the defendant could not be put in the wrong. Such a demand would have been necessary if the defendant had been in a position where he could have complied with it. But he was not, and the demand would have been wholly futile. At the time the plaintiff demanded back the payments on the purchase price, it was definitely understood on both sides that the defendant could not give possession, and the plaintiff's demand for the

money was made upon that basis. There are no further points which require discussion.

Judgment affirmed.

Shaw, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Mr. Justice Sloane, deeming himself disqualified, did not participate.

Rehearing denied.

All the Justices concurred.