WASSON *v.* TAYLOR.

4-4033

Opinion delivered November 11, 1935.

*Moore, Gray, Burrow & Chowning,* for appellants.
*John Sherrill* and *Howard Cockrill,* for appellees.

660

McHANEY, J. Dr. Charles M. Taylor died testate in 1905, leaving a large estate, and by the terms of his will he created a trust into which he conveyed practically all of his property, and appointed the Union Trust Company and Julia P. Taylor as trustees for the management and control of said trust estate. They were given full and complete power to sell, rent, lease, mortgage or otherwise dispose of the properties held by them. The trustees accepted said trust and took charge of the trust property and continued in charge thereof until August, 1933. In 1927, they purchased from the Union Trust Company, agent, $50,000 in notes which had been executed by Conoway Scott and Lillian Scott, his wife, which notes were secured by deed of trust on certain real property owned by the Scotts in Pulaski County, aggregating 788 acres. The notes became due on March 1, 1930, at which time there remained unpaid $43,366.11 of the indebtedness. In December, 1931, Mrs. Lillian Scott died, leaving a will by the terms of which she appointed the Union Trust Company executor of her estate, and letters testamentary to it were issued on December 23, 1931. Suit was instituted for the balance on said notes by appellees, and on April 2, 1934, judgment was rendered in their favor against Conoway Scott for the sum of $57,207.72, the amount then due including interest. This judgment was compromised by appellees by an assignment of the notes to Mr. Sam W. Reyburn, prior to judgment, for the sum of $39,054.39, and it is alleged in this action that this was the highest and best price that could be obtained for the assets securing the debt, and it is further alleged that Mr. Scott did not then and does not now have any additional property or assets from which the deficiency of $18,153.33 could be collected.

Thereafter, this action was instituted against the Union Trust Company, in which it was alleged that it became its duty as trustee under the will to present to itself as executor of the estate of Lillian Scott, and, as such executor, to allow the claim for the total amount of the indebtedness due at the time of her death, $43,366.11, and that it was its duty to present the claim to the probate court for allowance and thereafter to collect from

Lillian Scott's estate, and from itself as executor, the amount of the claim to the extent of the assets of the estate; and that as said executor there came into its hands assets of said estate largely in excess of the amount of their claim. It is further alleged that their failure to do this was a breach of duty to appellees, and that, as a result of the alleged breach of trust, appellees have sustained a loss in the sum of $18,153.33, for which amount they prayed judgment against the Union Trust Company and Marion Wasson, as State Bank Commissioner, in charge thereof, and that said judgment be declared a prior and preferred claim, and that the Bank Commissioner be restrained from pledging the assets of the trust company or in any manner encumbering same until further orders of the court. Appellants answered, denying the material allegations of the complaint and setting up an affirmative defense which will hereinafter be discussed. On a trial of the case, the court found the value of the land subject to the mortgage to be $40,000 upon the date of the sale by appellees of the mortgage notes to Reyburn, and decreed that appellees have judgment against the Union Trust Company and the Bank Commissioner for $17,207.70, the difference between the value of the property as found by the court and the amount of the mortgage debt. The court further held that the claim of appellees was a prior or preferred claim, and ordered that it be so classed and paid by the Bank Commissioner out of the assets of the trust company.

To reverse this judgment, appellants make three contentions as follows: (1). That appellees by their own conduct in voluntarily compromising with Reyburn are estopped from maintaining the action. (2). That, upon assigning and transferring the Scott notes and mortgage to Reyburn, appellees passed out of the case for the reason that the sale and transfer to Reyburn of the notes and mortgage carried all their interest therein, and all remedies and rights incident thereto, to Reyburn. (3). That the claim asserted by appellees can in no event be a prior or preferred claim, even though they be wrong about points (1) and (2), and the court erred in so classifying it.

1. We cannot agree with appellants that appellees estopped themselves from proceeding in this action by compromising their indebtedness against Scott with Mr. Reyburn. The notes became due in March, 1930, and their maturity was extended until March, 1933, at which time they defaulted. It is true that the testamentary trust of which appellees were the beneficiaries was terminated in August, 1933, and that appellees thereafter took charge of and handled for themselves the assets of said estate. We cannot see how the settlement with Reyburn could work an estoppel, in view of the fact that the court found on disputed evidence that the settlement was not an improvident one, but was one for the approximate value of the land securing the notes at the time the settlement was effected. As above stated, the settlement was made with Mr. Reyburn for $39,054.39, and the court found the value of the land to be at that time, $40,000. It is not contended that this finding is against the preponderance of the evidence. It appears therefore that appellees exercised good judgment in making the settlement with Mr. Reyburn. But appellants insist that it was the duty of appellees, before concluding a compromise with Reyburn, to notify them that they expected to assert a claim against them for the deficiency and thus give appellants an opportunity to protect themselves against loss, or to minimize the loss, or by taking whatever steps the law gave them as a means to that end. It is argued that they might have raised Reyburn's bid and themselves purchased the notes and mortgage. While the record is silent as to positive testimony that they did know about it, we apprehend from the facts and circumstances in evidence that they knew all about every step that was taken in the case. The Union Trust Company was a party to the suit. These notes had been held by it in the trust estate for more than six years. It knew the notes were in default, and it knew the trust was terminated in August, 1933, six months after the extended maturity thereof. It is useless to speculate on what appellants might have done, had they been given formal notice. The fact is they did nothing to collect same prior to the termination of the trust, although one of the joint makers of the note

had died, leaving an estate in its hands as executor thereof, largely in excess of the full amount of the notes and interest, and no claim was presented to itself as executor of said estate seeking a collection of said debt. It did nothing looking to a collection of said debt when it had the power to do so and at a time when it was its duty to do so, prior to the termination of the trust, but permitted the bar of the statute of nonclaim to run against the estate of one of the joint makers. Appellants cite a number of cases to the effect that where a trustee, having failed to collect a note or mortgage before they were outlawed by the statute of limitations, and having thereafter paid the amount of the same to the trust estate, the title to the note and mortgage vested in the trustee by subrogation. These decisions cannot help appellants because it is undisputed that appellants did not pay the amount of the notes to the trust estate. Had they done so, they would have acquired the Scott notes by subrogation. We agree with the trial court that appellees did not estop themselves by settling or compromising the Scott indebtedness and assigning the notes and mortgage and the judgment based thereon to Mr. Reyburn.

(2) Nor can we agree that the sale of the Scott notes and mortgage to Reyburn divested appellees of this cause of action. It is contended that such sale carried with it the right to maintain the suit for negligence against the bank. We are of the opinion, however, that a mere assignment of the notes and mortgage without assignment of an independent cause of action against the trustee for negligence in handling the trust, did not pass to the assignee, but was a personal right independent of the indebtedness represented by the notes and mortgage. Counsel for appellants seem to rely upon the case of *Munson* v. *Exchange National Bank*, 52 Pac. (Wash.) 1011. This case appears to hold that an assignor who had a right of action against a bank for failure to notify an indorser, lost such right in assigning the note. We think the better rule, and the one supported by the weight of authority, is stated in *Robinson* v. *Saxon Mills*, 124 S. C. 415, 117 S. E. 424, to quote a headnote, as follows: "An assignment of the notes and mortgages does not *ipso facto* constitute an

assignment of a right of action for a tort which had theretofore been committed in reference to the property covered by the mortgages."

Only those rights are passed by assignment that are incident thereto, and all other rights, not regarded as incidental to the assignment, must be specifically mentioned to pass to the assignee. Here the assignment of the notes and mortgage to Reyburn carried with it all the rights the assignees had against the Scotts by virtue thereof. The right to sue the Union Trust Company for a neglect of duty in connection with the handling of the notes and mortgage was a personal right to appellees and was in no manner connected with any action against the Scotts to foreclose the land covered by the mortgage.

(3) We cannot agree with the trial court in classifying the judgment rendered as a preferred claim. We have many times had occasion to construe § 1, act 107, of the Acts of 1927 as to what constitutes a prior creditor. The fifth subdivision of that section provides that a prior creditor is: "The beneficiary of an express trust, as distinguished from a constructive trust, a resulting trust, or a trust *ex maleficio*, of which the bank was the trustee and which was evidenced by a writing signed by said bank at the time thereof." Of course, the Union Trust Company was the trustee of an express trust in this case. The latter part of said section of said act defines the rights of prior creditors. It is too lengthy to quote, but it clearly requires that the subject of a preferred claim must be money or property that actually got into the bank, enhanced its assets and, as such, may be followed and traced into the hands of the Bank Commissioner. The only exception made by the act is the seventh class of prior creditors. While appellees are the beneficiaries of an express trust of which the Union Trust Company was the trustee and which was evidenced by a writing signed by the bank at the time of the creation of the trust, still there was no money or property that ever came into the bank by virtue of this trust, and there just remains no room to classify this claim as a preferred one.

The decree of the chancery court was therefore correct in all things except in the matter of the classification

of said judgment claim. The cause will be reversed and remanded with directions to classify the claim as that of a common creditor.