[L. A. No. 17753.   In Bank.—April 24, 1941.]

NATIONAL RESERVE COMPANY OF AMERICA (a Corporation), Appellant, v. METROPOLITAN TRUST COMPANY OF CALIFORNIA (a Corporation), Respondent.

Hill, Morgan & Bledsoe, Charles P. McCarthy and William L. Baugh, Jr., for Appellant.

Burr & Smith, William H. B. Haymond and Phillip Grey Smith for Respondent.

TRAYNOR, J.—The Metropolitan Trust Company of California, as trustee, and the National Thrift Corporation of America, as trustor, entered into a written trust agreement under which the Trust Company was to hold in trust a fund as security for the bonds, contracts, certificates, and annuity agreements which the Thrift Company was selling as investments. The agreement required the Thrift Company to maintain in the trust fund an amount equal to not less than 110 per cent of the total aggregate principal of the outstanding bonds and the cancellation value of the contracts and certifications, less the total amount of subsisting loans. It further required the trustee to identify and authenticate all bonds, contracts, certificates and annuity agreements issued by the Thrift Company, provided that the latter was under no default known to the trustee with respect to the maintenance of the trust fund.

In 1927 Ward Esplin purchased from the Thrift Company a $1,000 participation certificate, secured by the trust, and

identified and authenticated by the trustee. In 1932 the Thrift Company became insolvent and a federal equity receiver was appointed to take over the trust fund. On July 8, 1933, Esplin entered into a written agreement with the National Reserve Company of America purporting to assign all his right, title, and interest in the participation certificate to the Reserve Company for the purpose of permitting the latter to collect the proceeds from the certificate for him. The proceeds were to be applied by the Reserve Company as a cash credit toward the purchase of one of its own investment certificates by Esplin. The Thrift Company participation certificate and the purported assignment were then delivered to the receiver of the trust fund by the National Reserve Company. Since the value of the trust fund had fallen below the 110 per cent required by the trust agreement the liquidation value of the certificate was substantially less than the stated cancellation value. In 1936 the National Reserve Company instituted the present action against the Metropolitan Trust Company alleging that it had violated the trust agreement at various times by identifying and authenticating certificates issued by the Thrift Company with knowledge that the value of the collateral deposited in the trust fund was less than the required 110 per cent. Esplin was not joined in the suit. This action, for the benefit of plaintiff and all other holders of such contracts and certificates, is representative in character and seeks to hold the defendant trustee accountable for the difference between the actual value of the fund and the value at which it should have been maintained.

At the opening of the trial it was stipulated that prior to the consideration of any other issue evidence should be taken to determine whether any right to sue upon the cause of action ever vested in plaintiff. After receiving evidence on that issue, the trial court found that Esplin had not assigned the certificate to plaintiff for a valuable consideration and that plaintiff was not the owner thereof. It also found that the cause of action sued upon by plaintiff was never assigned or transferred to it by Esplin. The present appeal was taken from the judgment entered by the trial court pursuant to these findings.

The issues are: (1) Did the instrument of July 8, 1933, constitute a valid assignment of the participation certificate by Esplin to plaintiff, vesting the legal ownership in plaintiff?

(2) If so, did it transfer to plaintiff the right to sue for a breach of the trust agreement occurring prior to the assignment?

The written instrument of July 8, 1933, provided as follows:

"WHEREAS, the undersigned having purchased of the National Reserve Company of America one of its investment certificates, hereafter referred to as certificate, and

"WHEREAS, the undersigned is the owner of NATIONAL THRIFT CERTIFICATE #136B CLASS B SERIES F having an estimated value of $835.10, and hereinafter referred to as property, and

"WHEREAS, the undersigned is desirous of having the cash value of said property applied, at the earliest possible moment, as a cash interest-bearing credit on said certificate.

"NOW, THEREFORE, in consideration that National Reserve Company agrees to give an immediate conditional credit (not a credit on my certificate) of 100 per cent of the above estimated value, and of the company's further agreement to convert said credit to a cash interest-bearing credit on the certificate immediately as received by it in the form of cash or its equivalent in acceptable first mortgages, and that it further agrees to immediately pass to the cashable interest-bearing credit on said certificate all such amounts received by it from or out of said property; the undersigned hereby assigns and transfers, for the purposes hereinabove stated and for none other, all his right, title and interest of, in and to the hereinabove described property, and hereby constitutes, appoints and empowers any duly qualified officer of said National Reserve Company in his name, place and stead, and as his attorney in fact, for said purposes.

"PROVIDED, that, at any time upon the determination and conclusion that it is or will be unable to collect further proceeds out of said property, said National Reserve Company may, or upon the written request at any time of the undersigned shall, re-assign and transfer to the undersigned, said property depleted by the amount of the aforesaid receipts arising out of said property and credited as aforesaid to said certificate, whereupon this agreement shall become automatically terminated and cancelled.

"Executed and acknowledged by Ward H. Esplin . . . July 8, 1933."

■ There is no basis for the trial court's finding that Esplin did not assign the certificate to plaintiff. The evidence is clear that Esplin signed the instrument. Its language is that of an assignment, the granting clause reading in part: " . . . the undersigned hereby *assigns and transfers* . . . all of his right, title and interest in and to the hereinabove property . . . " (italics added), and it is not less an assignment because of its power of attorney provision. (*Jackson* v. *Deauville Holding Co.*, 219 Cal. 498 [27 Pac. (2d) 643].) Read in its entirety, the instrument admits of no other construction than that plaintiff is the assignee despite defendant's objection that the instrument fails to name an assignee. Otherwise, for example, it would be impossible for plaintiff to re-assign the certificate pursuant to the provision in the last paragraph that " . . . said National Reserve Company may . . . re-assign . . . said property . . . ".

■ The contention that the assignment is void for lack of consideration likewise cannot be sustained. Since the instrument provides that plaintiff is to credit all proceeds received by it to the purchase price of an investment certificate sold by it to Esplin, the assignment is in essence one for collection. It is well established that an assignment of a chose in action for collection vests the legal title in the assignee whether or not any consideration is paid therefor. In such case the assignee may maintain a suit thereon in his own name, even though the assignor retains an equitable interest in the thing assigned. (*Greig* v. *Riordan*, 99 Cal. 316 [33 Pac. 913] ; *Morrison* v. *Veach*, 190 Cal. 507 [213 Pac. 945] ; *Cohn* v. *Thompson*, 128 Cal. App. (Supp.) 783 [16 Pac. (2d) 364].) The instrument in question therefore constitutes a valid assignment of the certificate to plaintiff.

■ There remains the question whether the cause of action for breach of the trust indenture passed to plaintiff with the assignment of the certificate. There is no limitation, express or implied, in the instrument to support the trial court's conclusion that the assignment was designed solely to authorize the collection by plaintiff of such dividends as it might receive on the certificate through a liquidation of the existing trust collateral. Plaintiff is empowered to apply to the purchase price of its investment certificate on behalf of the assignor "all such amounts received by it from or out of said [assigned] property". The words of the granting

clause in no way restrict the source of such collections. Defendants rely upon the introductory clause of the instrument which reads: ''WHEREAS, the undersigned is desirous of having the *cash value of said property* applied, at the earliest possible moment, as a cash interest-bearing credit on said certificate''. (Italics added.) They urge that the term ''cash value'' refers to the cancellation value of the certificate in liquidation and thus indicates that the assignment was restricted to the collection of dividends in such liquidation. The granting clause of the assignment, however, transfers all of Esplin's right, title and interest without limitation, and is controlling over ambiguous recitals in the preamble. (*Bing* v. *Bowers*, 26 Fed. (2d) 1017.) Moreover, plaintiff as an assignee for collection should collect all amounts recoverable on the certificate, and the cash value of the certificate would therefore include not only the amounts available in the trust estate for its cancellation, but in addition, any amounts which may be obtained by bringing suit against one whose wrongdoing has depleted the available funds and thereby reduced the value of the certificate.

Defendants contend that the provision in the assignment which allows plaintiff to re-assign the certificate upon determining that it is unable to collect further proceeds and enables Esplin to demand a re-assignment of the certificate at will indicates that the cause of action was not intended to pass under the assignment. Esplin, however, has made no such demand for re-assignment, and the provision limits only the possible duration of the assignment and not the extent of the rights transferred thereby.

The statement in the assignment that it was made ''for the purposes hereinabove stated, and for none other'' constitutes not a limitation upon the rights assigned, but simply a requirement that the moneys collected be applied to the purchase price of the investment certificate as provided in the first paragraphs of the assignment. The clause limits not what plaintiff may collect, but plaintiff's subsequent disposition of what is collected.

■ In determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling. (See cases cited in 5 C. J. 949.)

■ An unqualified assignment of a contract or chose in action, however, with no indication of the intent of the par-

ties, vests in the assignee the assigned contract or chose and all rights and remedies incidental thereto. (See cases cited in 3 Cal. Jur. 277.) These incidental rights include certain ancillary causes of action arising out of the subject of the assignment and accruing before the assignment is made.

Unless an assignment specifically or impliedly designates them, accrued causes of action arising out of an assigned contract, whether *ex contractu* or *ex delicto,* do not pass under the assignment as incidental to the contract if they can be asserted by the assignor independently of his continued ownership of the contract and are not essential to a continued enforcement of the contract. (*Regan Vapor-Engine Co.* v. *Pacific Gas-Engine Co.,* 49 Fed. 68, 1 C. C. A. 169]; *Schaffer* v. *Vandewater & Co.,* 160 App. Div. 803 [145 N. Y. Supp. 769]; *Wasson* v. *Taylor,* 191 Ark. 659 [87 S. W. (2d) 63]; *Fox* v. *Hirschfeld,* 157 App. Div. 364 [142 N. Y. Supp. 261]; *Steele* v. *Brazier,* 139 Mo. App. 319 [123 S. W. 477]; *Robinson* v. *Saxon Mills,* 124 S. C. 415 [117 S. E. 424]; *Morris* v. *McCulloch,* 83 Pa. St. 34; [*contra, Jackson* v. *Meinhardt,* 99 Cal. App. 283 (278 Pac. 462)].)

If, however, an accrued cause of action cannot be asserted apart from the contract out of which it arises or is essential to a complete and adequate enforcement of the contract, it passes with an assignment of the contract as an incident thereof. Thus, the assignment of a contract passes from assignor to assignee an accrued cause of action for rescission (*Latimer* v. *Capay Valley Land Co.,* 137 Cal. 286 [70 Pac. 82]; *National Pacific Oil Co.* v. *Watson,* 184 Cal. 216 [193 Pac. 133]; *Sherman* v. *International Life Ins. Co.,* 291 Mo. 139 [236 S. W. 634]), or for reformation (*Beck-Brown Realty Co.* v. *Liberty Bell Ins. Co.,* 137 Misc. 263 [241 N. Y. Supp. 727)], and a creditor's assignee acquires the right to set aside a prior fraudulent conveyance by the debtor. (*Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303]; *Billingsley* v. *Clelland,* 41 W. Va. 234 [23 S. E. 812].) As a corollary, if an assignor by express provision of a contract is denied the right to assert an accrued cause of action after he has assigned away his interest in the contract, the right to sue passes to his assignee. There would otherwise be no one to enforce the right.

The trust indenture, upon which the present action is based, specifically provides that ownership of a certificate secured by the agreement is a condition precedent to the main-

tenance of a cause of action for violation of a covenant contained therein. The assertion of the cause of action is thus dependent upon ownership of the certificate. All right, title and interest in such certificate has been assigned to plaintiff. Only by virtue of its transfer to the plaintiff could the cause of action continue to exist. Furthermore, plaintiff as an assignee for collection must secure the largest obtainable amount, and to the end of complete and adequate enforcement of the contract must be able to sue the delinquent trustee for a restitution that will enhance the value of the certificate.

The judgment is reversed.

Carter, J., Curtis, J., and Shenk, J., concurred.

Respondent's petition for a rehearing was denied May 22, 1941.