NEW YORK LIFE INSURANCE COMPANY *v.* THWEATT.

4-9947 AND 9948                                      254 S. W. 2d 68

Opinion delivered January 19, 1953.

*Elton A. Rieves, Jr.,* and *Rose, Meek, House, Barron & Nash,* for appellant.

*Hale & Fogleman,* for appellee.

Ed. F. McFaddin, Justice. This appeal involves the double indemnity benefits[1] on two insurance policies, each for $1,000. The insured, Rayford W. Thweatt, died on December 23, 1950, from a pistol shot in the head. The life benefits were promptly paid, but the appellant refused to pay the double indemnity benefits, and claimed that the insured had committed suicide. Mrs. Thweatt brought one action[2] as an individual, and another as guardian of her minor daughter; and each action was to compel the Insurance Company to pay the double indemnity benefits. The jury found against the suicide theory urged by the Insurance Company, and the cases are here on appeal. Only three questions are here urged.

I. *The Appellant Says: "The Court erred in refusing to transfer the cases to Equity".* The policy under which Mrs. Thweatt claims as an individual was issued in 1940, and the policy under which she claims as guardian was issued in 1937. But in March, 1943, the insured and the Insurance Company entered into a Trust Agreement on each policy, by the terms of which the Insurance Company, *as Insurer,* agreed to pay to itself, *as Trustee,* all of the proceeds of the policy. The proceeds from one policy were to be paid by the Trustee to Mrs. Thweatt individually at stated intervals over a period of years; and the proceeds from the other policy

---

[1] That is, each policy provided that double the face amount would be paid if the insured died because of external violent accidental means, excluding suicide.

[2] Since there were two separate policies, and two different *cestue que* trusts, there were two actions; but the cases were consolidated and tried on one record and are disposed of in this one opinion.

were to be paid by the Trustee to the daughter (of whom Mrs. Thweatt is now guardian) at stated intervals over a period of years. When the Insurance Company refused to pay to itself, as Trustee, the double indemnity benefits, Mrs. Thweatt, individually, and as guardian, filed these two actions on November 2, 1951. The Insurance Company filed its answer in each case on November 26, 1951, denying liability on the sole ground that the insured had committed suicide, which was excluded from the double indemnity coverage. On May 1, 1952, the day the jury trial began in the cases, the Insurance Company filed in each case its motion to transfer to Equity, which motion, in its entirety, is as follows:

"The proceeds of the Policy which is involved in this suit are payable in accordance with the terms of a Trust Agreement dated March 15, 1943. By the terms of said Agreement any amounts collectible as double indemnity benefits are to be held by New York Life Insurance Company, as Trustee, and distributed to the beneficiaries in monthly installments. A copy of the Trust Agreement is attached, marked Exhibit 'A', and made a part hereof. To compel the defendant to transfer to itself, as Trustee, or to compel the defendant, as Trustee, to acknowledge that it holds the double indemnity benefit for distribution under the terms of the Trust Agreement is a proceeding over which equity alone has jurisdiction. It is improper for this Court, directly or indirectly, to assume jurisdiction over a trust or trustee obligations. Wherefore, the defendant asks that this suit be transferred to equity."

The Trial Court denied the motion to transfer to Equity; and we hold that the Trial Court was correct. The Trust Agreement between the insured and the Insurance Company, referred to as Exhibit "A" in the said motion, provided in part:

"Said Company, immediately upon receipt at its Home Office of due proof of my death, shall receive as Trustee, from itself as insurer, the proceeds of said policies . . ."

Thus the Insurance Company was to act in two distinct capacities: (1) as the insurer, and (2) as the trustee. Until the insurer paid the double indemnity benefits, it did not act as trustee. The Insurance Company, *as insurer,* refused to pay the double indemnity benefits, so no trust had ever come into existence on the double indemnity benefits here involved. These actions were to compel *the insurer* to fulfill its obligations as *such insurer.* To compel payments under the terms of an insurance policy, an action at law is proper. Certainly the Insurance Company, as trustee, would not or at least in this case did not—sue itself as insurer. Then who could sue the Insurance Company in its capacity as insurer? Mrs. Thweatt, as the individual in one policy and the guardian in the other, was the proper party to bring such action. Our Statute (§ 27-801 Ark. Stats.) provides that an action must be brought in the name of the real party in interest. The Insurance Company was a party defendant, and Mrs. Thweatt individually and as guardian, was the one that was anxious to see the money paid by the insurer to the trustee.

Our cases hold that if the defendant sets up an equitable defense, then the case should be transferred to Chancery; but that it is error to transfer a case to Chancery when the only defense is one that can be made in a case at law. In *New York Life Ins. Co.* v. *Parker,* 188 Ark. 39, 64 S. W. 2d 556, we said on this point:

"It was lastly argued by the appellant that the court erred in refusing to transfer the case to equity. The court correctly retained the case for the reason that all of the defenses urged were available in a court at law, and adequate and complete relief could there be had. No prejudice could therefore have resulted from the court's action in this regard. *Hugus* v. *Sanders,* 164 Ark. 385, 261 S. W. 899; *Mott* v. *First Nat. Bk.,* 171 Ark. 7, 283 S. W. 3; *Bassett* v. *Mutual, etc. Assn.,* 178 Ark. 906, 12 S. W. 2d 893."

For other cases to the same effect, see *Berg* v. *Johnson,* 139 Ark. 243, 213 S. W. 393, 8 A. L. R. 489; *Sheffield* v. *Maxwell,* 163 Ark. 448, 260 S. W. 399; *Wasson*

v. *Taylor,* 191 Ark. 659, 87 S. W. 2d 63; and *Rice* v. *Rice,* 206 Ark. 937, 175 S. W. 2d 201.

In the case at bar, the only defense made by the Insurance Company was the defense of suicide, and that was an issue that could be settled in an action at law. The motion to transfer to equity stated that there was a Trust Agreement. But, the Insurance Company was not sued as Trustee; it was sued *as Insurer,* and the only defense was one that could be determined in an action at law. Therefore, the Trial Court was correct in denying the motion to transfer to Equity.

II. *The Appellant Says That It "was entitled to directed verdicts".* This presents the suicide theory relied on by the Insurance Company, and necessitates a statement of the applicable law and also a review of the evidence in the case at bar. One of our landmark cases is that of *Grand Lodge* v. *Banister,* 80 Ark. 190, 96 S. W. 742. There, as here, the insured died from a pistol shot wound, and payment of the policy was refused on the claim that the insured had committed suicide. There, as here, the jury found against the Insurance Company, and the question was whether an instructed verdict should have been given for the Insurance Company. Justice McCulloch, speaking for the Court, said:

"The only disputed question is whether the shot was accidental or an act of intentional self-destruction. The burden of proving suicide was upon the defendant. It alleged that fact as a defense to the action, and must prove it, for until that fact is established liability of the defendant for the amount of the policy is clear. "There is no dispute about the facts which were susceptible of direct proof, but the case turns upon the conclusion to be drawn therefrom—whether or not they establish suicide indisputably. For if the facts are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, then they were properly submitted to the jury for determination. Judges should not, under that state of the case, substitute their judgment for that of the jury.

*St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, 33 S. W. 1070. "After careful consideration of the evidence we are of the opinion that this question was properly submitted to the jury, and that there was evidence sufficient to support the verdict. Conceding that the theory of death by suicide finds more rational support in the facts established by direct proof than the theory of death by accident—that there is greater probability from the evidence that death resulted from a suicidal act than an accident—still we cannot say that death by suicide is the only reasonable conclusion to be drawn from the evidence. The proof does not exclude with reasonable certainty death from accidental shooting, and, the burden being upon the defendant to establish the defense by proof, it was properly left to the jury to say whether or not it was a case of suicide."

We have followed the rule of the Banister case in our subsequent cases: sustaining the suicide defense in such cases as *New York Life Ins. Co.* v. *Watters* (7/3/22), 154 Ark. 569, 243 S. W. 831; *Fidelity Mutual Ins. Co.* v. *Wilson* (1/16/28), 175 Ark. 1094, 2 S. W. 2d 80; *Mutual Life* v. *Sturdivant,* 215 Ark. 697, 222 S. W. 2d 812; and refusing the suicide defense in such cases as *Aetna Life* v. *Taylor* (3/19/17), 128 Ark. 155, Ann. Cas. 1918(b) 1122, 193 S. W. 540, Ann. Cas. 1918B, 1122; *N. Y. Life Ins. Co.* v. *Redmon* (12/16/35), 191 Ark. 1003, 88 S. W. 2d 324; and *Continental Cas. Co.* v. *Speer,* 215 Ark. 174, 219 S. W. 2d 763.

The language in the Banister case, as above quoted, has been reiterated in many subsequent cases. So from our holdings, the law is clear: the question is whether the facts are entirely inconsistent with any reasonable hypothesis of death other than by suicide. In other words, for the Insurance Company to be entitled to an instructed verdict in this case, the evidence pointing to suicide must be so conclusive that fair minded men can reach no other conclusion.

Has the Insurance Company discharged such burden? This necessitates a review of the evidence. The insured, Ray Thweatt, was 35 years of age, engaged

in rather extensive farming operations. He had more than $40,000 invested in farm equipment. He and his wife lived on their farm a short distance from Marion, Arkansas, and he also rented and cultivated other farms. The Thweatts had been married 15 years, and had two children, Elizabeth, aged 8, and Ray, Jr., aged 6. After enjoying the usual breakfast, about 8:30 on the morning of December 23, 1950, Mr. Thweatt told his wife that he would drive over to one of the farms to see about some corn being pulled, and would return shortly; as he was planning to take his wife and children to Memphis for Christmas shopping that day. He told one of the hired men around the house that he would be back in about 30 minutes. He did not return.

About 6:00 o'clock that afternoon, a search was instituted; and Mr. Thweatt was found dead in his car in the field. A pistol shot had entered his head about an inch above and just in front of his right ear, and had come out of his head about an inch above and just behind the left ear. That bullet was never found. Both doors of the car (a Chevrolet coupe) were closed; the glass of the right window was closed, and the glass of the left window was open.

The position of Thweatt's body was shown: he was in a slumped position, sitting in the driver's seat under the steering wheel, with his feet crossed near the ankles. His head was forward toward his chest. His hands were cupped in his lap, and a .38 Smith & Wesson revolver was in his hands, with the barrel toward the front of the car and at a 45-degree angle. His left hand was around the barrel and his right hand around the handle. There was a small powder burn about the hair area on the right side of the head, and also a small powder burn on one hand. The mortician said there was no evidence of hemorrhage, and that Mr. Thweatt had been dead several hours before his body was found.

The car was in a field just off U. S. Highway No. 61, and was visible to people riding in vehicles along the highway. That the car had been there in the field for at least four or five hours before Mr. Thweatt's body

was discovered is shown by the evidence. Furthermore, it was a foggy morning on the day in question, and when the motor was started in Mr. Thweatt's car, it was found that the windshield wipers and the heater started operating.

It was the Insurance Company's theory that Mr. Thweatt had placed the pistol to his head and pulled the trigger, and then his hands, still clutching the pistol, had fallen into the position stated. Whether his hands were over or under the steering wheel is not shown. That Mr. Thweatt's death occurred through external violent means is conceded. But did he commit suicide, or was his death the result of an accident or foul play? That is the question. To negative the suicide theory, the plaintiff showed Mr. Thweatt's financial condition, his happy home life, the universal friendship in which he was held, his cheerful outlook on life, and his farming plans for the next year. While he owed money, he was entirely solvent and had unlimited credit; he was in good health, domestically happy, devoted to his family, and had made contracts with his workers for cultivating his crops in the next year. He had purchased $45 worth of fireworks for a Christmas party for his friends. There had never been any indication by Mr. Thweatt that he contemplated suicide, and no notes so indicating were ever found. In short, the plaintiff insisted that Mr. Thweatt had everything to live for and no reason for suicide.

To support the idea of foul play, the plaintiffs argued that if Mr. Thweatt had shot himself in the head, it would have been impossible for the pistol to have remained in his hands and then to have fallen into the position found. Also, the plaintiffs showed the physical conditions around Mr. Thweatt's parked car. There was a beer can on the left of the car, and also one on the right, although both doors were closed and the right window was up. Mr. Thweatt's car was parked almost in the field road, and there were wagon tracks in the field indicating that someone had driven out of the field road to get around the car. There were two empty

cartridges in the pistol (admittedly Mr. Thweatt's) and one spent bullet was found in his pocket. The Sheriff testified that the bullet "looks like it had been shot at something and then probably pried out". There were no bullet holes in the car. The pistol was a revolver and not an automatic.

To detail all of the evidence would extend this opinion to voluminous proportions. The transcript consists of 334 typewritten pages, and the printed briefs consume 247 pages. As stated in *Grand Lodge* v. *Banister, supra*, the question for this Court on appeal is not whether Thweatt committed suicide, but whether the Insurance Company has repelled all reasonable hypotheses that his death occurred in any way except suicide. From the facts as we have mentioned them, particularly the physical facts, there are certainly two diametrically opposed conclusions that reasonable men could reach in drawing the inferences from these facts. One conclusion points to suicide: the other conclusion points to foul play and the placing of the gun in Thweatt's hands after his death. Since there is a conclusion that could be reached other than suicide, it therefore follows that the Insurance Company was not entitled to an instructed verdict; and the Trial Court was correct in so ruling.

III. *The Insurance Company Claims "the judgments were excessive"*. In each case the plaintiff had sued for the double indemnity benefit, plus 12% as penalty and plus a reasonable attorneys' fee. (See § 66-514 Ark. Stats.) The jury gave the plaintiff the full amount sued for, and the Court added in each case $120 as the statutory penalty and $300 as the attorneys' fee. These amounts were not excessive, and we find no merit to the appellant's claim in this regard.

There is, however, one point on which the judgments should be amended, and it is this: when Mrs. Thweatt individually and as guardian, obtained judgment against the Insurance Company *in its capacity as insurer*, then such judgments should have provided that the insurance money—less penalties, attorneys' fees and court costs— be paid to the Insurance Company, *in its capacity as*

*Trustee,* and not to Mrs. Thweatt individually **or as** guardian. In the oral argument before this Court, appellees' attorneys admitted that the judgment should be amended to so provide, and we so·amend and affirm the judgment at the cost of the appellant, but allow no additional attorneys' fees for this appeal.

Affirmed.

Justice GEORGE ROSE SMITH not participating.