[Cite as *Paul Cheatham IRA v. Huntington Natl. Bank*, 2017-Ohio-9234.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Paul Cheatham IRA                           Court of Appeals No. L-16-1292

    Appellant                               Trial Court No. CI0201502696

v.

The Huntington National Bank                **DECISION AND JUDGMENT**

    Appellee                                Decided:  December 22, 2017

* * * * *

Ronald R. Parry, for appellant.

J. Philip Calabrese, Jay A. Yurkiw, Robert W. Trafford and
Ryan L. Graham, for appellee.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, denying appellant's, Paul Cheatham IRA, motion to certify a class.  For the reasons

that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} The facts for purposes of this appeal are not in dispute. On May 19, 2015, appellant filed this class action lawsuit against appellee, The Huntington National Bank, on behalf of itself and other bondholders who invested funds into a municipal bond issue described as "$6,590,000 COUNTY OF LUCAS OHIO HOSPITAL FACILITIES REFUNDING REVENUE (NON-TAXABLE) BONDS, SERIES 1998 (VILLA NORTH PROJECT) CUSIP 54309 BP6, 549309 BQ4, 549309 BR2, 549309 BS0." The complaint alleged that Lucas County was the technical obligor on the bonds for tax purposes, but in reality, Foundation for the Elderly, Inc. ("Foundation") was the obligor and lessee of the Villa North nursing home project. Appellee served as the trustee for the bondholders and as lessor of the project pursuant to a Trust Indenture entered into between appellee and Lucas County.

{¶ 3} Sometime before June 2003, Foundation went into default, and West Toledo Healthcare became the substitute obligor. By December 2003, Benchmark Healthcare of Toledo, Inc. ("Benchmark") had become the obligor in place of West Toledo Healthcare, and had defaulted on the bond payments. Notably, appellee provided notices to the bondholders of the defaults and changes in obligors. In May 2004, Benchmark filed for reorganization under Chapter 11 of the Bankruptcy Code, and in December 2007, filed its First Amended Plan of Reorganization. After the bondholders voted in favor of the plan, the bankruptcy court approved the plan. Relevant here, appellant began purchasing these

2.

bonds for a fraction of the face value on November 3, 2003, and continued to purchase them through June 7, 2007.

{¶ 4} By July 2009, Benchmark had failed to implement the amended reorganization plan. Thus, the bankruptcy was dismissed, and appellee filed a foreclosure action against Benchmark. In November 2014, the Villa North project was sold and a final distribution was made to the bondholders. In the final distribution, the bondholders only received approximately $350,000 of the $6,590,000 initial bond issue.

{¶ 5} Within the class action complaint, appellant asserted claims for breach of fiduciary duty, breach of trust under R.C. 5801.01 et seq., negligence, breach of contract, and liability for mismanagement of the Villa North nursing home project. In general, appellant alleged that appellee "did virtually nothing to protect the interest of the Bondholders, while collecting substantial sums of Bondholder money as its compensation." Upon motion of appellee, the trial court dismissed all of the claims except the breach of contract claim as being barred by the statute of limitations.

{¶ 6} Thereafter, appellant moved to certify a class on the remaining breach of contract claim, describing the class as "All persons or entities who own bonds." Appellee opposed the motion for class certification, arguing, inter alia, that appellant had not satisfied the requirement under Civ.R. 23(B)(3) that, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In particular, appellee argued that the class is

3.

comprised of bondholders who purchased the bonds at different times and after different key events. Thus, the facts, evidence, and related legal issues of liability would differ among class members based on when the members acquired the bonds, or whether the members approved the bankruptcy reorganization plan. Appellant, on the other hand, argued that the issue of whether appellee breached the Trust Indenture was common to all current bondholders because under R.C. 1308.16(A), "[A] purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer." Appellant concluded, therefore, that the right to sue for breach of contract that was held by bondholders at the time of the breach transferred to subsequent purchasers of the bonds.

{¶ 7} On November 16, 2016, the trial court entered its judgment denying appellant's motion to certify a class. The trial court reasoned that the term "rights in the security" under R.C. 1308.16(A) does not include a claim against a third party for breach of contract, such as appellant's claim in the current action. Consequently, because appellant has alleged numerous breaches over a significant period of time, and because the claims do not transfer to subsequent purchasers, different class members would have different potential damages and would emphasize different potential breaches. Therefore, the trial court determined that appellant had not satisfied the requirement under Civ.R. 23(B)(3). Further, because the trial court found the predominance issue in Civ.R. 23(B)(3) to be determinative, it did not consider any of the other Civ.R. 23 requirements for bringing a class action.

4.

## II. Assignment of Error

{¶ 8} Appellant has timely appealed the trial court's November 16, 2016 judgment, asserting one assignment of error for our review:

> 1. The trial court incorrectly interpreted the provisions of R.C. 1308.16(A) (§ 8-302 of the Uniform Commercial Code (UCC)) in ruling that the transferors' right to file a lawsuit was not one of the rights that was transferred when a municipal bond (an investment security) was acquired by the transferee, the Plaintiff-Appellant.

## III. Analysis

{¶ 9} We review the trial court's decision in determining whether a class action may be maintained for an abuse of discretion. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 18. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 10} "[A]ppellate courts overwhelmingly, if not universally, give trial courts broad discretion in deciding whether to certify a class." *Davis* at ¶ 18, quoting *Hamilton v. Ohio Savs. Bank,* 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to

manage its own docket." *Id.* "Therefore, 'while a trial court's determination concerning class certification is subject to appellate review on an abuse-of-discretion standard, due deference must be given to the trial court's decision' and any 'finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously.'" *Id.*, quoting *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

{¶ 11} The Ohio Supreme Court has recognized seven requirements that must be satisfied before an action may be maintained as a class action under Civ.R. 23:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. *Hamilton* at 71, 694 N.E.2d 442, citing Civ.R. 23(A) and (B).

{¶ 12} Here, the trial court's decision, and this appeal, focuses on whether appellant has satisfied Civ.R. 23(B)(3), which provides,

A class action may be maintained if Civ.R. 23(A) is satisfied, and if:

* * *

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action.

{¶ 13} In its appellate brief, appellant frames the issue we must decide as "whether the purchaser of a bond acquires causes of action that arose, under the terms of a Trust Indenture, prior to the time that the bondholder acquired the bonds." Appellant acknowledges that if we determine that a subsequent purchaser does not acquire those causes of action, then certification of the class is not appropriate. However, appellant takes the position that the subsequent purchaser of a bond does acquire the cause of action pursuant to R.C. 1308.16, which is Ohio's version of U.C.C. § 8-302.

7.

{¶ 14} R.C. 1308.16 provides, in its entirety,

(A) Except as otherwise provided in divisions (B) and (C) of this section, a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer.

(B) A purchaser of a limited interest acquires rights only to the extent of the interest purchased.

(C) A purchaser of a certificated security who as a previous holder had notice of an adverse claim does not improve its position by taking from a protected purchaser.

{¶ 15} Appellant argues that his claim against appellee is a "right in the security" because the Trust Indenture explains that the trust is to be executed "for the equal and proportionate benefit, security and protection of all present and future holders and owners of the Bonds issued or to be issued under and secured by this Indenture." The trial court, recognizing that this is an issue of first impression, disagreed. In reaching its decision, the trial court relied on the reasoning set forth in *Consol. Edison, Inc. v. Northeast Util.*, 318 F.Supp.2d 181 (S.D.N.Y.2004), *rev'd on other grounds*, *Consol. Edison, Inc. v. Northeast Util.*, 426 F.3d 524 (2d Cir.2005).

{¶ 16} In *Consolidated Edison*, the dispute arose over a failed merger between Consolidated Edison, Inc. ("Con Ed") and Northeast Utilities ("NU"). As part of the agreement, Con Ed agreed to purchase all outstanding shares of NU at a substantial premium over the market price. Shortly before the merger was completed, though, Con

Ed announced that it would not proceed. Con Ed then filed an action seeking a declaratory judgment that it had no obligations under the merger agreement. NU counterclaimed, arguing that Con Ed repudiated and breached the agreement. NU sought to recover, in part, the "lost premium" on behalf of its current and future shareholders as third-party beneficiaries to the merger agreement. Robert Rimkoski intervened as a defendant and filed a claim against Con Ed, also seeking to recover the lost premium due to Con Ed's breach of the merger agreement. Rimkoski sought to represent a class of similarly situated individuals who owned shares of NU on March 5, 2001, the date of the alleged breach. The question before the court was whether "the third-party beneficiary claim belong[s] to those who held NU shares at the time of Con Ed's alleged breach on March 5, 2001, * * * or to those who are holding NU shares at the time that a judgment against Con Ed is entered, collected, or distributed." *Id.* at 183. More specifically, "Where shareholders are third-party beneficiaries of a contract between the corporate issuer of the stock and a third party, is the right to sue that third party for breach of the contract automatically transferred to a subsequent purchaser of the stock?" *Id.*

{¶ 17} NU argued, as appellant does here, that the stock-related contract claims against third parties were automatically assigned to subsequent purchasers of the stock by virtue of New York's version of U.C.C. § 8-302(a), which is identical to R.C. 1308.16(A). The trial court rejected this argument, finding that the legislative history and structure of the U.C.C. "confirm that § 8-302(a), rather than defining what rights are in the security, involves the mechanism for transferring rights and applies primarily to

9.

disputes over the quality of title and the competing ownership rights passed from transferor to transferee." *Id.* at 188. The court concluded that,

> Section 8-302 does not define "rights in a security" or codify a rule assigning to purchasers any claim accrued while possessing the security. The provision simply provides that whatever "rights in the security" are, they are automatically transferred to a purchaser unless (a) the transferor did not own or control them, (b) the purchase was for a limited interest, or (c) the purchaser is a prior holder with notice of an adverse claim taking from a protected purchaser. *Id.* at 189-190.

{¶ 18} Having concluded that U.C.C. § 8-302 automatically conveys only the "rights in the security," the trial court then determined that the "rights in the security" do not include the rights of "third-party beneficiaries arising out of agreements separate from the contract embodied in the security." *Id.* at 190. This is where we find *Consolidated Edison* to be distinguishable.

{¶ 19} Whereas the parties in *Consolidated Edison* were bringing counterclaims against a separate and unrelated company based on its purported breach of an agreement with the company that issued the shares, here, appellant is bringing a claim against the trustee for the bondholders based on a breach of the Trust Indenture. The Trust Indenture is part of the "bond proceedings." R.C. 140.01(J) ("'Bond proceedings' means one or more ordinances, resolutions, trust agreements, indentures, and other agreements or documents, and amendments and supplements to the foregoing, or any combination

10.

thereof, authorizing or providing for the terms, including any variable interest rates, and conditions applicable to, or providing for the security of, obligations and the provisions contained in such obligations."); *see also* R.C. 140.06(I) ("Such obligations may be secured additionally by a trust agreement or indenture between the public hospital agency and a corporate trustee which may be any trust company or bank * * *. Any such agreement or indenture may contain, as part thereof, any of the bond proceedings, * * * and other provisions which are customary or appropriate in an agreement or indenture of such type, including but not limited to: * * * (3) The rights and remedies of the holders of obligations and of the trustee, and provisions for protecting and enforcing them * * *."). Thus, a claim for breach of the Trust Indenture arises out of the contract with the bondholders, and is therefore properly considered a "right in the security" that passes to a subsequent purchaser under R.C. 1308.16(A).

{¶ 20} Appellee argues that this result improperly transforms R.C. 1308.16(A) to provide for the automatic transfer of all rights "related to" the security or "accrued while possessing" the security, and cites two cases for the proposition that ownership of a security does not automatically result in an assignment of any claims. We find the cases cited by appellee to be inapposite.

{¶ 21} In *In re Nucorp Energy Secs. Litigation*, 772 F.2d 1486 (9th Cir.1985), the plaintiffs (the Phelps Committee) brought an action against the indenture trustee, raising a federal claim for breach of trust under the Trust Indenture Act, as well as state-law claims for breach of fiduciary duty, willful misconduct, fraud and deceit, and negligence.

The action was related to a class action brought by parties who purchased debentures between October 1, 1981, and January 20, 1982. In the class action, the class argued that the indenture trustee knew that the disclosure documents accompanying the debenture issue were misleading. The Phelps Committee represents purchasers who bought the debentures from class members after January 20, 1982. In bringing its action, the Phelps Committee argued that it automatically acquired the sellers' causes of action when it purchased the debentures from the class members. Thus, the issue before the court was "whether, under federal or state law, the direct purchasers' rights were automatically transferred to the subsequent purchasers." *Id.* at 1488.

{¶ 22} As it pertains to the federal claim for breach of trust under the Trust Indenture Act, the Ninth Circuit held that federal law applied to the assignability of such claims, and under federal law, there was no remedy for "subsequent purchasers to whom no misrepresentations were made directly or indirectly and to whom no statutorily provided cause of action was expressly assigned." *Id.* at 1490. As to the assignment of the state-law claims, the court found that New York law applied, and under that law, the state-law claims were not automatically transferred. In so holding, the Ninth Circuit agreed with the rationale that "[i]f causes of action were automatically transferred, defendants could be subject to double liability, and the transferees would recover damages even though they had suffered no injury, while the injured transferors would recover nothing." *Id.* at 1493.

12.

{¶ 23} Likewise in *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 971 (2d Cir.1996), the Second Circuit affirmed the trial court's holding that "[A] bondholder's claim under the [Trust Indenture Act] against an indenture trustee is not automatically assigned to a subsequent purchaser of the bond."

{¶ 24} However, *Nucorp* and *Bluebird* both involved claims under the Trust Indenture Act, which is not relevant here. Further, neither *Nucorp* or *Bluebird* considered U.C.C. § 8-302 to determine whether a claim for breach of the Trust Indenture Act was a "right in the security." Finally, to the extent that *Nucorp* addressed attendant state-law claims against the indenture trustee, we note that those claims sounded in tort, not in contract for breach of the trust indenture agreement. Thus, we do not find *Nucorp* or *Bluebird* relevant to resolving the issue before us.

{¶ 25} Instead, we find this case to be more closely analogous to *R.A. Mackie & Co., L.P. v. PetroCorp Inc.*, 329 F.Supp.2d 477 (S.D.N.Y.2004), which was decided by the same court that decided *Consolidated Edison*. In *R.A. Mackie*, the plaintiffs were secondary purchasers of warrant certificates that were issued pursuant to a Warrant Agreement between Southern Mineral Corporation and American Stock Transfer and Trust Company. Southern Mineral Corporation ultimately was purchased by and merged into PetroCorp. Thereafter, plaintiffs filed a suit against PetroCorp, asserting, inter alia, two contract claims for breach of the Warrant Agreement, where the breach occurred prior to the plaintiffs acquiring the warrants. Relevant here, PetroCorp asserted as an

13.

affirmative defense that the right to bring claims for breach of the Warrant Agreement was not transferred with the warrants when the plaintiffs purchased them.

{¶ 26} Relying on Texas' version of U.C.C. 8-302(a), the trial court rejected PetroCorp's argument. Specifically, the trial court noted that the claim was asserted against the successor-in-interest to the issuer of the warrants, and was based on the warrant agreement. The court found that "[t]he Warrants are a contract between PetroCorp and the Warrant holders that provide rights through the terms of the Warrant Certificate and the Warrant Agreement. The Warrant holders' rights in the Warrants 'thus include the rights against the issuer [here, PetroCorp] under the contract embodied in the security [here, the Warrant Agreement] as supplemented by federal and state law.'" *Id.* at 507, quoting *Consolidated Edison*, 318 F.Supp.2d at 192. Therefore, the court held that the plaintiffs' claim for breach of the warranty agreement was a "right in the security" that automatically transferred with the purchase of the warrant. *Id.*

{¶ 27} Similarly, in the case before us, appellant's cause of action arises from a breach of the Trust Indenture, which is part of the contract with the bondholders. Appellee argues that *R.A. Mackie* is distinguishable because in that case the cause of action was against the issuer, not the indenture trustee. However, we do not find that distinction to be meaningful since the basis for the claim is grounded in the same instrument that is part of the contract with the bondholders. Appellee's position leads to the incongruous result that breach of the trust indenture by an issuer is a "right in the security," but breach of the same trust indenture by the trustee is not. Therefore, we hold

14.

that a contract claim for breach of the Trust Indenture, whether asserted against the trustee or the obligor, arises out of the contract with the bondholders and is thus a "right in the security" that automatically transfers to subsequent purchasers pursuant to R.C. 1308.16(A).

{¶ 28} Accordingly, appellant's assignment of error is well-taken.

## IV. Other Civ.R. 23 Requirements

{¶ 29} In addition to arguing in opposition to appellant's assignment of error, appellee argues that class certification under Civ.R. 23 is still not appropriate as appellant has failed to satisfy the other requirements of that rule. However, because the trial court based its determination solely on Civ.R. 23(B)(3), and did not consider any of the other requirements, we decline to rule on those issues for the first time on appeal. "If we were to reach issues that had not been addressed by the trial court in the first instance, we would be usurping the role of the trial court and exceed[ing] our authority on appeal." *Catalanotto v. Byrd*, 9th Dist. Summit No. 27824, 2016-Ohio-2815, ¶ 12, quoting *State v. M.D.*, 9th Dist. Lorain No. 14CA010657, 2015-Ohio-4003, ¶ 7. Therefore, we must remand the matter to the trial court to consider the remaining Civ.R. 23 requirements.

## V. Conclusion

{¶ 30} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is reversed. The matter is remanded to the trial court to consider the

remaining Civ.R. 23 requirements for class certification and for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

Christine E. Mayle, J.
CONCURS AND
WRITES SEPARATELY.

_____
JUDGE

**MAYLE, J.**

{¶ 31} I concur with the majority's conclusion that, when appellant purchased the bonds at issue, it acquired "all rights in the security that the transferor had or had power to transfer" under R.C. 1308.16(A) and, in this case, such "rights" included accrued claims against appellee for breach of the Trust Indenture. The majority bases its

conclusion on R.C. 140.01(J) and (I), which provide that a trust indenture is a part of the "bond proceedings," and therefore a "right" that passed to appellant under R.C. 1308.16(A). In my view, while that demonstrates that a bondholder has standing to sue under a trust indenture, it does not answer the ultimate question of whether a bondholder has standing to sue for prior breaches of that agreement. I believe that the answer to that question depends upon the precise terms of the particular "security" at issue.

{¶ 32} A case from the Supreme Court of California, *National Reserve Co. v. Metropolitan Trust Co.*, 17 Cal.2d 827, 112 P.2d 598 (1941), is instructive here, and has been cited with approval by at least one Ohio court. *See 17 Mile, L.L.C. v. Kruzel*, 8th Dist. Cuyahoga No. 99358, 2013-Ohio-3005, ¶ 13 (citing the rule announced by *National Reserve* when considering whether the assignment of "all rights" to a lease agreement included the right to accrued claims for past rent).

{¶ 33} In *National Reserve,* the Metropolitan Trust Company of California, as trustee, and the National Thrift Corporation of America, as trustor, entered into a written trust agreement under which the Trust Company was to hold in trust a fund as security for the bonds, contracts, certificates, and annuity agreements that the Thrift Company would sell as investments. Ward Esplin purchased a participation certificate from the Thrift Company, and then later assigned "all of his right, title, and interest" in the participation certificate to the Reserve Company. The Reserve Company later instituted an action against the Trust Company, on its behalf and on behalf of all other holders of such contracts and certificates, seeking recovery for various breaches of the trust agreement

17.

that occurred before the assignment. The court considered whether Esplin's assignment of "all * * * right title and interest" in the participation certificate to the Reserve Company included the right to sue for a prior breach of the trust agreement.

{¶ 34} The court first recognized that "[i]n determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling." *Natl. Res.* at 832. The court then stated the following rule, based on its review of case law across various states:

Unless an assignment specifically or impliedly designates them, accrued causes of action arising out of an assigned contract, whether *ex contractu* or *ex delicto*, do not pass under the assignment as incidental to the contract if they can be asserted by the assignor independently of his continued ownership of the contract and are not essential to a continued enforcement of the contract.

If, however, an accrued cause of action cannot be asserted apart from the contract out of which it arises or is essential to a complete and adequate enforcement of the contract, it passes with an assignment of the contract as an incident thereof. (Citations omitted.) *Id.* at 833.

{¶ 35} The *National Reserve* court then examined the language of the trust indenture at issue and determined that the accrued breach-of-contract claims were transferred with the participation certificate to the plaintiff-assignee. The court offered the following reasoning:

18.

The trust indenture, upon which the present action is based, specifically provides that ownership of a certificate secured by the agreement is a condition precedent to the maintenance of a cause of action for violation of a covenant contained therein. The assertion of the cause of action is thus dependent upon ownership of the certificate. All right, title and interest in such certificate has been assigned to plaintiff. Only by virtue of its transfer to the plaintiff could the cause of action continue to exist. *Id.* at 833-834.

{¶ 36} Interestingly, in the case relied upon by the majority, *R.A. Mackie & Co., L.P. v. PetroCorp Inc.*, 329 F.Supp.2d 477 (S.D.N.Y.2004), although the court found that the breach-of-contract claim was a "right in the security" that automatically transferred with the purchase of the warrant under Texas's version of U.C.C. 8-302(a) by distinguishing the court's prior decision in *Consolidated Edison, Inc. v. Northeast Utilities*, 318 F.Supp.2d 181 (S.D.N.Y.2004), the court went on to recognize that the language of the specific warranty agreement at issue was also "significant." *R.A. Mackie* at 507. The court stated:

Significantly, the Warrant Agreement provides that "all covenants, conditions, stipulations, promises, and agreements in this Agreement contained shall be for the sole and exclusive benefit of the parties hereto and their successor and the holders of the Warrant Certificates." That provision also limits to the "parties hereto and the holders of the Warrant

19.

Certificates any right, remedy, or claim under or by reason of this Agreement * * *."  The Warrant Agreement thus authorizes holders of the Warrants, without limitation, to maintain a legal proceeding for breach of that Agreement.  (Citations omitted.)  *Id.* at 507-508.

{¶ 37} The *R.A. Mackie* court then concluded that "[n]either the Warrant Agreement itself nor § 8.302 of the Texas UCC prevents the plaintiffs from bringing claims against PetroCorp as successor-in-interest to Southern Mineral based on Warrants that were purchased after the date of the breach of the Warrant Agreement."  *Id.* at 508.

{¶ 38} I believe *R.A. Mackie* could have framed the issue better:  rather than asking whether a contract "prevents" an assignee from asserting an accrued cause of action, the court should have asked whether the accrued cause of action "can be asserted by the assignor independently of his continued ownership of the contract and [is] not essential to a continued enforcement of the contract."  *Natl. Res.*, 17 Cal.2d at 833, 112 P.2d 598; *17 Mile*, 8th Dist. Cuyahoga No. 99358, 2013-Ohio-3005, at ¶13.  If *R.A. Mackie* had applied that standard, I believe it would have reached the same result because only "holders of the Warrant Certificates" had a right to make claims under the agreement—thus, a claim for breach of the Warrant Agreement could not be asserted by the assignor independently of his continued ownership of the contract.

{¶ 39} In this case, the Trust Indenture contains language that is analogous to the contracts in both *National Reserve* and *R.A. Mackie* and, in my view, demonstrates that the breach-of-contract claims against appellee were transferred with the bonds.

20.

**{¶ 40}** The general provisions for the bonds at issue state that they "are issued under a Trust Indenture dated as of July 1, 1998, between the Issuer and the Trustee (the 'Indenture')," and further provide that

> [t]he Holder of this Bond shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default thereunder, or to institute, appear in or defend any suit or other proceeding with respect thereto, *except as provided in the Indenture.*" (Emphasis added.)

Thus, we must look to the Trust Indenture to determine what "rights" can be transferred to bondholders under 1308.16(A).

**{¶ 41}** Section 11.03 of the Trust Indenture provides the following:

> Limitation of Rights. With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from this Indenture or the Bonds is intended or shall be construed to give to any person other than the parties hereto, the Lessee, and *the Bondholders* any legal or equitable right, remedy or claim under or in respect to this Indenture or any covenants, conditions and provisions herein contained; this Indenture and all of the covenants, conditions and provisions hereof being intended to be and being for the sole and exclusive benefit of the parties hereto, the Lessee and *the Bondholders* as herein provided. (Emphasis added.)

21.

**{¶ 42}** The Trust Indenture defines "Bondholder" to mean "as to any Bond, the person in whose name such Bond is registered on the Bond Register." Thus, similar to the securities at issue in *National Reserve* and *R.A. Mackie*, actual ownership of the bond "is a condition precedent to the maintenance of a cause of action" and "[o]nly by virtue of its transfer to the plaintiff could the cause of action continue to exist." *Natl. Res.*, 17 Cal.2d at 833-834, 112 P.2d 827. Any breach-of-contract claims under the trust indenture therefore transfer with the bond to subsequent bondholders because such claims cannot be asserted apart from the contract out of which they arise and are essential to the complete enforcement of the Trust Indenture.

**{¶ 43}** For these reasons, I concur with the majority's conclusion that the judgment of the Lucas County Court of Common Pleas should be reversed and the matter remanded to the trial court to consider the remaining Civ.R. 23 requirements for class certification.