[Cite as *A.R. v. Toledo City School Dist. Bd. of Edn.*, 2019-Ohio-3402.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | SIXTH JUDICIAL DISTRICT |
| COUNTY OF LUCAS | ) | |

| A. J. R., et al. | C.A. No.     L-18-1004 |
|---|---|
|     Appellants | |
|     v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOARD OF EDUCATION OF TOLEDO CITY SCHOOL DISTRICT, et al. | COURT OF COMMON PLEAS COUNTY OF LUCAS, OHIO CASE No.     CI-2016-2001 |
|     Appellees | |

DECISION AND JOURNAL ENTRY

Dated: August 23, 2019

CARR, Presiding Judge.

{¶1} Plaintiffs-Appellants A.R., a minor, by and through her parent, A.J.R. ("Father"), Father, and C.R. ("Mother") appeal from the judgments of the Lucas County Court of Common Pleas. This Court reverses and remands the matter for proceedings consistent with this decision.

I.

{¶2} In the fall of 2015, A.R., who was four years old at the time, was admitted to DeVeaux Elementary School as an early entrant kindergartener. She would turn five years old in late November 2015. While A.R. was placed in Defendant-Appellee Amanda Vail Lute's class, Ms. Lute was on leave from the first day of school until early November 2015 and so A.R. was initially taught by a substitute.

{¶3} According to Mother, A.R. was consistently bullied by S., another kindergarten student, from August 2015 through March 2016. The bullying consisted of name calling, including

calling A.R. "baby" and teasing her for being four years old. In addition, the bullying included pushing in the bathroom line and leaving A.R. out of play group at school.

{¶4} Mother discussed the early bullying with the substitute teacher. When the bullying continued, in late October 2015, Father called the assistant principal, Defendant-Appellee Cynthia Skaff, to report his concerns. Father asked Ms. Skaff to address S.'s behavior because A.R. was exhibiting signs of mental anguish and emotional injury. Father indicated he planned to withdraw A.R. due to S.'s harassment but Ms. Skaff reassured Father that A.R. would not be subject to bullying anymore.

{¶5} Mother and Father maintained that they notified the named Defendants, Ms. Lute, Ms. Skaff, and Defendant-Appellee Ralph Schade, the principal, on at least four occasions of the specific bullying and harassment of A.R. by S. Mother and Father also reported that they were assured on numerous occasions that A.R. was doing well.

{¶6} On March 3, 2016, while the two were sitting at the same table in class, S. struck A.R.'s face with a sharpened pencil. A.R. sustained a puncture wound and a scrape near her cheek. The injuries did not require emergency medical treatment. According to Ms. Lute, she did not observe the incident, did not hear screaming or crying, and no students reported the incident to her.

{¶7} While Mother and Father noticed the injury that day, A.R. asserted it happened in gym. Only later did A.R. tell Father that S. had caused the injury. On March 7, 2016, Mother and Father began the process of withdrawing A.R. from the school.

{¶8} A.R., by and through Father, filed a complaint against Ms. Lute, Ms. Skaff, Mr. Schade, and Toledo Public Schools. The counts included recklessness or reckless negligence, neglect of a child of tender years, endangering a child of tender years, vicarious liability with

regard to a tortious act, and promissory estoppel. After filing an answer, the Defendants moved for judgment on the pleadings. The trial court granted the motion as to all claims and Defendants except for the claim of recklessness or recklessness negligence against Ms. Lute, Ms. Skaff, and Mr. Schade.

{¶9} In October 2016, A.R. filed a motion in limine and/or for declaratory judgment arguing that Ms. Lute, Ms. Skaff, or Mr. Schade might try to depose her and requesting that the trial court deny any such attempt to depose her or offer her testimony at trial. The motion further asserted that A.R. should be subject to voir dire in order to determine her competence to testify at trial. The trial court denied the motion as premature, noting that Ms. Lute, Ms. Skaff, and Mr. Schade had not opposed the motion, noticed A.R.'s deposition, or identified her as a trial witness. The trial court noted that, if that were to change, A.R. could renew her motion. A.R. never raised the issue again in the trial court.

{¶10} In March 2017, an amended complaint was filed against Ms. Lute, Ms. Skaff, and Mr. Schade alleging a single count of recklessness or reckless negligence. In addition, Mother and Father were added as parties and a derivative claim for loss of consortium was raised. In their answer, Ms. Lute, Ms. Skaff, and Mr. Schade raised the affirmative defense of immunity pursuant to Chapter 2744 of the Ohio Revised Code.

{¶11} Ms. Lute, Ms. Skaff, and Mr. Schade moved for summary judgment "as to any all remaining claims filed against them[.]" Ms. Lute, Ms. Skaff, and Mr. Schade argued that they were immune from the recklessness claim brought against them based upon R.C. 2744.03(A)(6), that A.R., Mother, and Father failed to produce sufficient evidence that A.R.'s injuries were caused by S. while at school on March 3, 2016, and that A.R., Mother, and Father failed to present evidence to support all of the elements of their recklessness claim. Ms. Lute, Ms. Skaff, and Mr.

Schade presented affidavits and Mother's and Father's depositions in support of their motion. A.R., Mother, and Father opposed the motion. Inter alia, they presented affidavits in support of their position, as well as Ms. Lute's, Ms. Skaff's, and Mr. Schade's responses to interrogatories. Ms. Lute, Ms. Skaff, and Mr. Schade filed a reply brief and an accompanying affidavit.

{¶12} The trial court ultimately granted Ms. Lute's, Ms. Skaff's, and Mr. Schade's motion for summary judgment finding that they were immune as A.R., Mother, and Father failed to demonstrate an issue of fact as to whether Ms. Lute, Ms. Skaff, and Mr. Schade disregarded a known or obvious risk of physical harm to A.R. In so doing, the trial court declined to determine whether there was sufficient evidence that S. actually injured A.R. with a pencil while at school. Further, because A.R.'s claim failed, the trial court concluded that Mother's and Father's claim for loss of consortium failed as a matter of law.

{¶13} A.R., Mother, and Father have appealed, raising three assignments or error for our review.

II.

## ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE, AT BEST, APPELLEES ACTED IN A RECKLESS MANNER.

{¶14} A.R., Mother, and Father argue in their first assignment of error that the trial court erred in granting summary judgment to Ms. Lute, Ms. Skaff, and Mr. Schade. A.R., Mother, and Father assert that Ms. Lute, Ms. Skaff, and Mr. Schade owed A.R. a heightened duty of care and that the record discloses a genuine issue of material fact with respect to whether their conduct was reckless.

{¶15} "We review a trial court's summary judgment decision on a de novo basis." *Northwest Ohio Props. v. Cty. of Lucas,* 6th Dist. Lucas No. L-17-1190, 2018-Ohio-4239, ¶ 29,

citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "Accordingly, we undertake our own independent examination of the record and make our own decision as to whether the moving parties are entitled to summary judgment." *Northwest Ohio Props.* at ¶ 29.

{¶16} "In order to prevail on a motion for summary judgment, the moving party must show that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." (Internal quotations and citation omitted.) *Afjeh v. Village of Ottawa Hills*, 6th Dist. Lucas No. L-14-1267, 2015-Ohio-3483, ¶ 10.

{¶17} "Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion and presenting proper evidence in support thereof." *Northwest Ohio Props.* at ¶ 30, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies this initial burden, the burden then shifts to the nonmovant to present specific facts demonstrating the existence of a genuine issue for trial. *Dresher* at 293. "The nonmovant cannot avoid summary judgment by submitting an unsupported, self-serving affidavit." *Northwest Ohio Props.* at ¶ 30. "A trial court must grant the motion with caution and must be careful to resolve doubts and construe evidence in favor of the nonmoving party." (Internal quotations and citations omitted.) *Afjeh* at ¶ 10.

{¶18} In general, an employee of a political subdivision is immune from liability in a civil action. *See Afjeh* at ¶ 12, citing R.C. 2744.03(A)(6). "There are three exceptions to this immunity: (1) acts or omissions outside the scope of employment; (2) acts or omissions made with 'malicious purpose, in bad faith, or in wanton or reckless manner'; and (3) when liability is expressly imposed by the Revised Code." *Afjeh* at ¶ 12, quoting R.C. 2744.03(A)(6).

{¶19} As A.R.'s, Mother's, and Father's argument on appeal focuses on recklessness, we will limit our analysis accordingly. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (Internal quotations and citations omitted.) *Id.* at ¶ 19. "In fact, the actor must be conscious that his conduct will in all probability result in injury." (Internal quotations and citation omitted.) *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 74.

{¶20} We begin by noting that Ms. Lute, Ms. Skaff, and Mr. Schade never expressly objected or moved to strike any of the evidence submitted by A.R., Mother, and Father. While Ms. Lute, Ms. Skaff, and Mr. Schade did assert that there was insufficient evidence to demonstrate that S. poked A.R. with a pencil at school because A.R., Mother, and Father relied on A.R.'s hearsay, Ms. Lute, Ms. Skaff, and Mr. Schade did not move to strike that testimony, nor did they object to its consideration in terms of whether their conduct was reckless. Moreover, while Ms. Lute, Ms. Skaff, and Mr. Schade argued that the "incident report" was not an "incident report[,]" they did not argue it was inadmissible. Further, nothing in the trial court's decision suggests that it decided not to consider some of the evidence. In fact, the trial court specifically indicated that it did not need to decide whether there was sufficient evidence presented to demonstrate a genuine issue of material fact with respect to whether S. injured A.R. with a pencil. Accordingly, this Court will proceed to consider all of the evidence in determining whether an issue of fact exists with respect to whether Ms. Lute's, Ms. Skaff's, and Mr. Schade's conduct was reckless. *See Consumer Portfolio Servs., Inc. v. Staples*, 6th Dist. Sandusky No. S-06-031, 2007-Ohio-1531, ¶ 30 (Noting that a trial court may consider otherwise inadmissible evidence if it is not objected to

and that, "[i]f the trial court considered the otherwise inadmissible evidence in granting summary judgment, then the appellate court will also consider the evidence in its de novo review.").

**{¶21}** A.R.'s, Mother's, and Father's amended complaint mentions that A.R. was persistently teased for being four years old; however, the focus of the allegations is the incident during which S. stabbed A.R. in her cheek with a pencil.

**{¶22}** In their motion for summary judgment, Ms. Lute, Ms. Skaff, and Mr. Schade argued that they had no knowledge of S. physically harming other students or adults and had no reason to suspect that S. posed a risk of harm to other students.

**{¶23}** Ms. Lute averred that when she returned from leave, she was informed by the substitute teacher and Mr. Schade that students, including S., had teased A.R. for being four years old. Ms. Lute denied that Father talked to her about A.R. being bullied at A.R.'s birthday party. In fact, Ms. Lute asserted that she was not informed or aware of any other instances of A.R. being teased by S. prior to March 3, 2016. On March 3, 2016, Ms. Lute's desk was approximately 10 feet from where S. and A.R. were sitting and Ms. Lute did not hear or see A.R. get injured. Further, no students reported the incident to Ms. Lute or the student teacher. A.R. did not report the incident to Ms. Lute and she did not notice any wounds on A.R.'s face.

**{¶24}** Ms. Skaff averred that her duties as assistant principal included overseeing student affairs. Ms. Skaff described Ms. Lute as "an extraordinary teacher[.]" Ms. Skaff indicated that on October 29, 2015, Father called her to inform her that A.R. was "discouraged" because S. was teasing her for being four years old. Ms. Skaff spoke to A.R. and S. after the phone call. A.R. told her that no one was being mean to her and S. stated that A.R. was S.'s friend. Ms. Skaff also averred that she periodically checked in with A.R. during lunch or in the classroom and A.R. was always "fine." Ms. Skaff opined that the October 29, 2015 phone call was the only time prior to

the incident that she was ever informed of A.R. being teased or bullied by S. On March 7, 2016, Ms. Skaff was informed by Mr. Schade that Father had told Mr. Schade that A.R. was stabbed with a pencil by S. on March 3, 2016. Neither Mr. Schade nor Ms. Skaff received any reports from teachers about the incident. Ms. Skaff and Mr. Schade investigated the incident and S. did not admit to poking A.R. Due to A.R. withdrawing from school, neither Ms. Skaff nor Mr. Schade had an opportunity to interview A.R. to confirm that S. injured her with a pencil.

{¶25} Mr. Schade averred that his duties as principal included management of the building and staff and overseeing discipline. Mr. Schade was informed early in the fall that A.R. was being teased for being four years old. In response, Mr. Schade talked to the other students about it and the teasing stopped. After the report of teasing, Mr. Schade would frequently check on A.R. during lunch. She always indicated that everything was alright and she often sat with the other students who had teased her. Mr. Schade opined that, prior to March 3, 2016, he was only aware of one incident of A.R. being teased and S. was one of the students who had teased her. Mr. Schade confirmed the incident was investigated. S. did not admit to poking A.R. and, according to Mr. Schade, S. kept changing her answers.

{¶26} The trial court determined that the evidence presented by Ms. Lute, Ms. Skaff, and Mr. Schade was sufficient to meet their burden and that A.R., Mother, and Father failed to meet their reciprocal burden. Even assuming that we agree that Ms. Lute, Ms. Skaff, and Mr. Schade met their initial burden, we cannot conclude that, when viewing the evidence in a light most favorable to A.R., Mother, and Father that they failed to establish the existence of a genuine issue of material fact with respect to whether Ms. Lute's, Ms. Skaff's, and Mr. Schade's conduct rose to the level of recklessness.

{¶27} Mother and Father also submitted affidavits of their own which were filed subsequent to their depositions. While "an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment[,]" there has been no argument below or on appeal that the affidavits at issue contradict Mother and Father's deposition testimony. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 28.

{¶28} Mother averred that from August 2015 through March 2016, S. consistently bullied A.R. Mother learned about the bullying from A.R. from multiple conversations with her. The bullying consisted of "name calling such as 'baby,' teasing for being 4 years old, pushing in the bathroom line, and leaving out of the play group." Mother confirmed and addressed this early bullying with the substitute teacher. In September and October 2015, the substitute teacher would often discuss with Mother the problems S. posed in the classroom. The substitute teacher described S. as a "troubled child with issues at home[.]" When Mother volunteered at school, she often noticed that S. was in trouble.

{¶29} Mother averred that, during this time, she "notified the Defendants either through oral or written complaints, at least four separate times, about the specific actions of S[.] bullying [A.R.]" Additionally, Mother opined that she had approximately a dozen conversations with the Defendants, during which they would confirm that A.R. was doing well.

{¶30} Father averred that he first learned that S. was bullying A.R. in late September or early October 2015. The bullying included "name calling such as 'baby,' teasing for being 4 years old, pushing in the bathroom line, and leaving out of the play group." Because of this, on October 29, 2015, Father called and reported his concerns about A.R. to Ms. Skaff. During the conversation, Father asked that S. be addressed about her behaviors because A.R. "seemed to be

exhibiting signs of mental anguish and emotional injury caused by ongoing torment." Her responses included "not sleeping[,] change[s] in personality[,] reduction of passion for education[,] reduction for want of friends[,] diminished trust for authorities/teachers." Father told Ms. Skaff that he planned to withdraw A.R. because of S.'s harassment. However, Ms. Skaff reassured Father that A.R. would not be subject to bullying anymore. Father indicated that he followed up with the substitute teacher and with all the other named Defendants throughout the year.

{¶31} According to Father and Mother, A.R. continued to experience bullying from S. As A.R.'s birthday drew closer, Father told A.R. that soon no one would be able to tease her about her age. The entire class was invited to A.R.'s birthday and Ms. Lute attended; however, S. did not. At the party, Father mentioned to Ms. Lute that he hoped that the party would eliminate the teasing. Ms. Lute's response indicated to Father that Ms. Lute was "fully aware of the bullying."

{¶32} Mother averred that when Ms. Lute returned to teach, her class included a lesson about the difference between being a "tattle-tale" and reporting problems. A.R. expressed confusion to Mother about whether talking about her being bullied was "tattling" or reporting. From November through March, Mother noticed that A.R. was not eating her lunches at school, was moody, and would not sleep well, often waking up in the middle of the night yelling or crying.

{¶33} Father indicated that in January 2016, A.R. reported that the bullying by S. continued. It included name calling, teasing, and being left out of groups. A.R. told Father that, on one occasion, S. told A.R. she had to eat "a disgusting concoction of miscellaneous food items" if A.R. wanted to sit at the table with her classmates and be "free of torment[.]"

{¶34} Father and Mother notified the "Defendants" of the bullying of A.R. in the lunchroom. Because Mr. Schade was in charge of the lunchroom, Father followed up with him

about the incident in February 2016. Mr. Schade told Father that he was checking on A.R. and she was not being subjected to bullying in the lunchroom while he was there.

{¶35} Father asserted that over the time that A.R. was enrolled at the school, Father notified the "Defendants on at least 4 occasions of specific bullying and harassment by S. towards [A.R.]" Father averred that, "prior to the March 3, 2016 incident, [he] notified the Defendants of the specific bullying instances, the escalating harassment and physical abuse, and [] notified them about [his] concerns for [his] daughter's safety and well-being."

{¶36} Mother reported that, when she went to school to help with Girl Scouts on March 3, 2016, she noticed the puncture wound on A.R.'s cheek. Mother asked A.R. about it and A.R. stated it happened in gym class. Mother did not believe A.R. Later, Father talked to A.R. about what happened and she disclosed that S. stabbed her with a pencil while they were sitting at the same table during class. Mother indicated that A.R. ultimately told her that S. walked over to A.R., told A.R. that S. did not like the way A.R. looked and stabbed A.R. with the pencil. The incident was never reported to Mother and Father by anyone from the school. In addition, photos of A.R.'s injuries accompanied A.R.'s, Mother's, and Father's response to Ms. Lute's, Ms. Skaff's, and Mr. Schade's motion for summary judgment. Those photos were also exhibits to Father's deposition.

{¶37} After withdrawing A.R. from school, Father learned that A.R. had been bullied by S. on picture day as well. When Father saw the photos from picture day, he noticed it appeared A.R. had been crying and asked her about it. A.R. admitted that she had been crying and stated that S. told A.R. that A.R.'s "mommy was going to die." A.R. did not tell the teacher or Father because she did not want to be a "tattle-tale" but indicated that the teacher knew about it because A.R. was visibly crying.

{¶38} A.R., Mother, and Father also submitted what they described as an "Incident report" written by Mr. Schade in support of their efforts to demonstrate S. was responsible for A.R.'s injuries. That document appears to be handwritten notes, which are somewhat difficult to read, about a discussion with S. The notes seem to support the conclusion that S. injured A.R. with a pencil. The notes also state that A.R. told the teacher, the teacher was angry at S., and Ms. Lute made S. say she was sorry. Additionally, A.R., Mother, and Father pointed to an email after the incident to Father from Mr. Schade in which Mr. Schade stated that he did talk with S. and S.'s father to "confirm the actions." However, Mr. Schade added that he would not make a judgment until a full investigation was completed.

{¶39} In the affidavit filed in response to A.R.'s, Mother's, and Father's opposition to the motion for summary judgment, Mr. Schade stated that, prior to March 3, 2016, S. had no prior disciplinary or behavioral records and no history of physically harming other students or staff. Mr. Schade further clarified that the document A.R., Mother, and Father referred to as an "Incident report" was not an incident report, and, instead, was a copy of the notes he complied during his investigation of the allegations that S. stabbed A.R. Further, Mr. Schade opined that the email exchange between himself and Father was not confirmation that S. injured A.R. with a pencil.

{¶40} When considering all of the foregoing in a light most favorable to A.R., Mother, and Father, we conclude that there remains a genuine issue of material fact with respect to whether Ms. Lute's, Ms. Skaff's, and Mr. Schade's conduct was reckless. Certainly Ms. Lute, Ms. Skaff, and Mr. Schade presented evidence that they were only aware of limited bullying, that they monitored and addressed the situation, and that they had no reason to suspect that S. would physically harm A.R. Nonetheless, A.R, Mother, and Father presented evidence that S.'s bullying of A.R. was ongoing and that it involved physical contact such as "pushing in the bathroom line,"

in addition to teasing and demanding that A.R. consume odd combinations of food. Father asserted that over the six month time frame, he notified the "Defendants" on at least four occasions of the "specific bullying and harassment by S[.] towards [A.R.]" Father clarified that, "prior to March 3, 2016, [he] notified the Defendants of the specific bullying instances, the escalating harassment and physical abuse, and [he] notified them about [his] concerns for [his] daughter's safety and well-being."

{¶41} Arguably, with this knowledge, it might seem reasonable to attempt to keep the two children separate, but there is nothing in the record that suggests that was done. Instead, there was evidence that S. and A.R. were still, at least on occasion, eating together in the lunchroom and were still being taught in the same classroom. More troubling, on March 3, 2016, Ms. Lute had S. and A.R. sitting at the same table in the classroom despite the ongoing bullying. Moreover, while Ms. Lute, in her affidavit, denied seeing S. injure A.R. with a pencil, Mr. Schade's notes about his conversation with S. reflect that A.R. reported the incident to Ms. Lute and Ms. Lute made S. apologize. Despite this, A.R.'s injury was not reported to her parents.

{¶42} Viewing the evidence in a light most favorable to A.R., Mother, and Father, there is evidence that Ms. Lute, Ms. Skaff, and Mr. Schade knew that A.R. was not only being verbally bullied, but she was also subjected to physical bullying, i.e. being pushed in line. They were also informed on multiple occasions that the bullying was ongoing and were informed that A.R.'s parents were concerned for her well-being and safety. Thus, we cannot agree with the trial court's conclusion that there was no evidence that Ms. Lute, Ms. Skaff, and Mr. Schade consciously disregarded or were indifferent to a known or obvious risk of physical harm to A.R. Given that the bullying continued and had involved physical contact in the past, a reasonable trier of fact could conclude that Ms. Lute, Ms. Skaff, and Mr. Schade engaged in conduct "characterized by

the conscious disregard of or indifference to a known or obvious risk of harm to another that [was] unreasonable under the circumstances and [was] substantially greater than negligent conduct." *Afjeh*, 2015-Ohio-3483, at ¶ 19. Because a genuine issue of material fact remains with respect to whether Ms. Lute, Ms. Skaff, and Mr. Schade were reckless, the trial court erred in granting summary judgment based upon immunity.

{¶43} To the extent that Ms. Lute, Ms. Skaff, and Mr. Schade assert other arguments on appeal, the trial court has yet to resolve those issues. This Court's role is that of a reviewing court. *See Cheatham v. Huntington Natl. Bank*, 6th Dist. Lucas No. L-16-1292, 2017-Ohio-9234, ¶ 29. "If we were to reach issues that had not been addressed by the trial court in the first instance, we would be usurping the role of the trial court and exceed[ing] our authority on appeal." (Internal quotations and citations omitted.) *Id.* Thus, upon remand, the trial court can consider Ms. Lute's, Ms. Skaff's, and Mr. Schade's other arguments in support of their motion for summary judgment.

{¶44} Finally, we must also conclude that the trial court likewise erred in granting summary judgment on Mother's and Father's consortium claim as it did so on the basis that A.R.'s claim failed.

{¶45} A.R.'s, Mother's, and Father's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

THE COURT ERRED IN CONSIDERING THE ISSUE OF SUMMARY JUDGMENT WITHOUT ADDRESSING WHETHER A.R.'S OUT-OF-COURT STATEMENTS WERE ADMISSIBLE OR WHETHER A.R.'S IN-COURT TESTIMONY WAS REQUIRED AND PROPER.

### ASSIGNMENT OF ERROR III

THE COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE IT VIOLATES APPELLANTS' RIGHT TO JURY TRIAL AND BECAUSE APPELLEES VIOLATED A.R.'S DUE PROCESS RIGHTS.

{¶46}  A.R., Mother, and Father argue in their second assignment of error that the trial court erred in considering summary judgment without addressing whether A.R.'s out-of-court statements were admissible.  A.R., Mother, and Father argue in their third assignment of error that the trial court erred in granting summary judgment based upon immunity because doing so violated their rights to a jury trial and due process.  Given this Court's ruling on A.R.'s, Mother's, and Father's first assignment of error, these arguments are no longer properly before us and we decline to address them further.

III.

{¶47}  A.R.'s, Mother's, and Father's first assignment of error is sustained and their remaining assignments of error are not properly before us.  The judgment of the Lucas County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lucas, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

**{¶48}** I agree with the majority's conclusion that this matter must be reversed and remanded, but for a different reason. The majority holds that the trial court erred by granting summary judgment to Ms. Lute, Ms. Skaff, and Mr. Schade based upon sovereign immunity because a genuine issue of material fact remains with respect to whether their conduct was reckless. I, however, would hold that the trial court erred by granting summary judgment because A.R., Mother, and Father set forth sufficient facts to rebut the presumption of immunity under Section 2744.03(A)(6). While that holding leads to the same ultimate conclusion, I write separately to express my belief that the analysis should focus on the burden-shifting framework under the immunity statute.

SCHAFER, J.
DISSENTING.

**{¶49}** Because I do not agree that the trial court erred by granting summary judgment in favor of Ms. Lute, Ms. Skaff, and Mr. Schade, and finding that the three individuals school employees are statutorily immune from liability on the claim asserted in A.R.'s amended complaint, I respectfully dissent.

{¶50} A.R. has alleged that the "complete failure" of Ms. Lute, Ms. Skaff, and Mr. Schade to "provide reasonable supervision, care, protection, or support, in accordance with standards of care appropriate for [A.R.]'s age, resulted in mental and physical abuse * * *." Aside from including the words "recklessness" and "reckless" in the caption of their claim of negligence, A.R. has not adequately alleged reckless conduct on the part of any one of the three individual school employees. *See O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 74; *see also Strayer v. Barnett*, 2d Dist. Clark No. 2016-CA-19, 2017-Ohio-5617, ¶ 40 ("Mere negligence in the performance of an employee's duties is insufficient to meet this high standard [of recklessness]."), *Vidovic v. Hoynes*, 11th Dist. Lake No. 2014-L-054, 2015-Ohio-712, ¶ 50 (holding that R.C. 2744.03(A)(6)(b) would not abrogate immunity from liability for simple negligence.) Nonetheless, A.R. contends that "recklessness" is an "interrelated factor" with regard to this claim of negligence. A.R. also asserts, without supporting authority, that special relationships and heightened duties in this case lower the hurdle to show statutory immunity. Setting aside any issue related to A.R.'s basis for claiming an exception to employee immunity, I would hold that A.R. failed to meet her summary judgment burden to demonstrate evidence of reckless conduct on the part of any one of the three individual school employees.

{¶51} "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph four of the syllabus. "Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk." *O'Toole*, 2008-Ohio-2574 at ¶ 73. This is a "rigorous standard[] that will in most circumstances be difficult to establish * * *." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 8 (2016).

**{¶52}** "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 12 (2018); *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992). "Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity." *O'Toole* at ¶ 75, citing *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994). Even though a court may be required to analyze facts to consider the immunity exceptions of R.C. 2744.03(A)(6) and determine whether an employee acted recklessly, that analysis does not necessarily "transform a question of law into a [question of fact] that cannot be resolved on summary judgment." *Stachura v. Toledo*, 6th Dist. Lucas No. L-12-1068, 2013-Ohio-2365, ¶ 21, citing *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68 (1982).

**{¶53}** On appeal, A.R. contends that there remain issues of fact as to whether the conduct of Ms. Lute, Ms. Skaff, or Mr. Schade was reckless. However, differing views as to the level of culpability involved with the alleged breach of duty owed to A.R., and conclusory allegations that conduct was "reckless" do not create a factual dispute. *See Hackathorn v. Preisse*, 104 Ohio App.3d 768, 772 (9th Dist.1995). A.R. contends that Ms. Lute, Ms. Skaff, and Mr. Schade acted with disregard or indifference to a known risk that S. would physically harm A.R. This contention is based on assumptions and speculation that Ms. Lute, Ms. Skaff, and Mr. Schade could or should have known that S. was likely to harm A.R.. Absent from the record, however, is evidence of any particular instance, prior to the March 3 incident with the pencil, where S. was known to have exhibited a propensity toward physical violence.

{¶54} Ms. Lute, Ms. Skaff, and Mr. Schade could only be expected to act in response to A.R.'s needs to the extent that they were aware of the nature and severity of any instances of bullying. A.R. has established that the parents reported bullying to the school on at least four occasions, and that one or more of the individual school employees were aware that: A.R. had been teased for being four years old, that A.R. had been excluded from play groups, and that children in the lunchroom tried to coax A.R. into eating odd food combinations. These reports may be indicative of verbal or relational bullying, but they do not foretell of an obvious risk that S. would persist in bullying and cause physical harm to A.R.

{¶55} The majority finds that there was evidence that A.R. was subjected to physical bullying because she was "being pushed in lines." I disagree with this conclusion because the record contains only a few vague passing references to some pushing in line. There is no evidence in the record to show that S. ever pushed A.R., that S. was ever accused of pushing A.R., or that either Ms. Lute, Ms. Skaff, or Mr. Schade were aware of any specific incident involving pushing. Further, the undisputed evidence in the record reflects that there is no evidence that S. had any record or known history of physical bullying or violent conduct. It cannot reasonably be said that Ms. Lute, Ms. Skaff, or Mr. Schade were reckless for perversely disregarding a known risk, because there is no evidence that they knew S. posed any risk of physical harm to A.R.

{¶56} Additionally, Ms. Lute, Ms. Skaff, and Mr. Schade established the absence of any evidence to support the claim that they failed to take any action whatsoever in response to the concerns of bullying that A.R.'s parents expressed to the individual school employees. School employees are not held to a standard that would require taking "perfect action to remedy bullying issues" in order to avoid being exposed to liability for related claims, but they must "take some precautions or steps to recognize and address the issue." *Vidovic*, 2015-Ohio-

712 at ¶ 58. A.R. has failed to demonstrate that any commission or omission of the three individual school employees, in response to reports of kindergarteners teasing or being teased, involved a perverse disregard of a known risk.

{¶57} There is uncontradicted evidence that Mr. Schade responded by talking with the students about teasing. He frequently visited A.R. during her lunch to check on her and inquire as to how everything was going. Mr. Schade observed A.R. sitting and eating with the students who previously teased her for being four years old.

{¶58} Ms. Skaff acknowledges that she received a phone call from A.R.'s father informing her that S. had been teasing A.R. for being four years old. Ms. Skaff responded by speaking with the children, and indicated that A.R. "told [her] that no one was being mean to her and S. said that [A.R.] was her friend." Additionally, Ms. Skaff periodically checked in with A.R. to make sure she was okay and, based on her observations, believed that A.R. "was always fine."

{¶59} After being informed of the teasing, Ms. Lute monitored A.R. and the other students. Although A.R. claims that there is a question as to whether Ms. Lute "recklessly supervised" A.R. on the date of the pencil incident, this allegation is limited to Ms. Lute and, furthermore, is not supported by evidence. There is no suggestion that Ms. Lute left the children unsupervised in the classroom when A.R. was allegedly attacked with a pencil. School officials have "'no general duty * * * to watch over each child at all times'" and, "[a]bsent the assumption of a more specific obligation, school officials are bound only by the common-law duty to exercise that care necessary to avoid reasonably foreseeable injuries." *Ratliff v. Oberlin City Schools*, 107 Ohio App.3d 548, 550 (9th Dist.1995), quoting *Redd v. Springfield Twp. School Dist.*, 91 Ohio App.3d 88, 91 (9th Dist.1993). Ms. Lute cannot reasonably be expected to omnisciently observe every action and interaction of each child in her classroom. Any failure on her part to observe or

prevent the alleged pencil incident between S. and A.R. could, at best, only plausibly amount to mere negligence. This certainly does not meet the "substantially greater" threshold to constitute reckless conduct. *Anderson*, at paragraph four of the syllabus.

{¶60} The majority concludes that "[a]rguably, with [the knowledge Ms. Lute, Ms. Skaff, and Mr. Schade possessed] it might seem reasonable to keep the two children separate, but there is nothing in the record that suggests that was done." However, there is no dispute that the school employees *did not* attempt to separate S. and A.R. A question as to whether separating S. and A.R. might, arguably, seem reasonable under the circumstances does not implicate a genuine issue of material fact. To establish recklessness in this context, A.R. would need to demonstrate that a failure to keep S. and A.R. separate constitutes a perverse disregard of a known or obvious risk that S. would harm A.R. Even assuming that Ms. Lute, Ms. Skaff, or Mr. Schade failed to act reasonably by not separating S. and A.R. in the classroom, this would be indicative of *negligence*—a substantially lesser degree of culpability than *recklessness*. Because Ms. Lute, Ms. Skaff, and Mr. Schade are statutorily immune from liability for negligent conduct, this question is immaterial to our present analysis pursuant to R.C. 2744.03(A)(6)(b).

{¶61} Based on the foregoing, I would conclude that—regarding the issue of immunity—there are no factual disputes requiring resolution by a finder of fact. In this instance, the individual school employees established the absence of a genuine issue of material fact, and A.R. failed to meet the reciprocal burden to demonstrate the existence of material facts that could establish recklessness on the part of Ms. Lute, Ms. Skaff, or Mr. Schade. Accordingly, it was incumbent upon the trial court to determine as a matter of law, and based on evidence in the record, whether reasonable minds could conclude that Ms. Lute, Ms. Skaff, and Mr. Schade acted in a reckless manner that would preclude immunity. *See Argabrite*, 2016-Ohio-8374 at ¶ 15. The trial court

correctly concluded that A.R. failed to present evidence that any of the individual school employees consciously disregarded or were indifferent to a known risk of harm to A.R., and properly found that Ms. Lute, Ms. Skaff, or Mr. Schade were entitled to summary judgment in their favor on the issue of immunity.

(Carr, J., Hensal, J., Schafer, J., of the Ninth District Court of Appeals, sitting by assignment.)

APPEARANCES:

A.J.R., II and ANTHONY J. GLASE, Attorneys at Law, for Appellants.

AMY M. NATYSHAK and SHAWN A. NELSON, Attorneys at Law, for Appellees.